NO. 12-00-00308-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JOSÉ PERALTA,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 José Peralta ("Appellant") appeals his conviction for aggravated robbery. He was sentenced
to imprisonment for forty years. Appellant raises three issues on appeal. We affirm.


Background

 On June 6, 2000, a man entered the Jack-in-the-Box restaurant ("the restaurant") on
Northwest Loop 323 in Tyler, Texas. As he walked into the restaurant, he moved briefly out of view
of the employees working behind the counter, donned a ski mask, and produced a gun. The man then
restrained a female employee, Charon Evans ("Evans"), held the gun on her from behind, and
demanded that she retrieve money from the cash register drawer. Suddenly, before Evans could
comply with any of his demands, an alarm sounded and the man fled the restaurant.

 At or about this same time, Michael Kieny ("Kieny"), a Tyler police officer, was patrolling
the area nearby. A dispatcher notified Kieny that an aggravated robbery had occurred at the
restaurant and that the suspects were reported to have escaped in a hatchback car and driven toward
town on Erwin street. Kieny was driving on Erwin toward the restaurant when he passed a
hatchback car matching the description of the getaway vehicle. Kieny turned his patrol car around
and attempted to stop the hatchback. The occupants of the hatchback attempted to elude Kieny and
a chase ensued. Eventually, the hatchback stopped. Its occupants exited the vehicle and fled on foot. 
Kieny pursued two individuals that exited the right side of the vehicle and later apprehended
Appellant. Kieny identified Appellant as one of the persons who had exited from the right side of
the vehicle.

 Augusta Robinson, Jr. ("Robinson") identified Appellant as the man he saw entering the
restaurant. Robinson testified that he was leaving the restaurant with his fiancé, Cynthia Stevenson
("Stevenson"). The two were the last two customers inside the restaurant. Robinson stated that he
had opened the door for Stevenson and that Appellant had entered the restaurant after Stevenson
exited, but before Robinson could follow. Robinson testified that he considered Appellant's act to
be rude, looked directly at Appellant and spoke to him. Robinson remembered that the encounter
had lasted approximately three seconds and noted that the person was a Hispanic male, who was
about 5'10" to 5'11" tall, had short black hair and a moustache and wore baggy blue jeans. Robinson
further testified that he and Stevenson were outside the restaurant buying a newspaper when he saw
the same man run from the restaurant wearing a ski mask and carrying a black gun.

 Stevenson also identified Appellant as the man she saw entering the restaurant. She testified
that as she exited the first set of doors at the restaurant, Appellant entered through the outer doors,
hunched over, with his hands in his pockets. Stevenson stated that as she approached Appellant, he
looked directly up into her face. Stevenson turned and watched as Appellant brushed by Robinson. 
She too testified that the man was Hispanic, was approximately 5'10" tall, had short hair, facial hair
and wore wide-legged jeans. Stevenson also testified that the man wore a light-colored shirt. 
Finally, Stevenson stated that she saw Appellant run from the restaurant while she and Robinson
were buying a newspaper.

 Brandy Young ("Young"), the shift leader at the restaurant, also identified Appellant as the
man who robbed the restaurant. Young testified that Appellant entered the restaurant as Robinson
and Stevenson were exiting. She testified that the man was Hispanic, was about 5'6" or 5'7" tall, had
short, spiked hair and a moustache, had a scar on his face and wore a white shirt and baggy blue
jeans. Young testified that she looked at Appellant for a couple of seconds before he disappeared
from her view. Concerned, Young leaned over the counter, peered around the corner and saw
Appellant pull a brown ski mask down over his face and produce a black gun from beneath his shirt. 
Young then informed her co-workers that they were about to be robbed and ran through the kitchen
to the back door. Young exited the back door setting off the alarm. Young testified that after she
ran out the back door, she saw Appellant run toward a nearby parking lot.

 Robinson, Stevenson and Young each identified Appellant at the police station within an
hour-and-a-half of the robbery. Each witness identified Appellant in a one-on-one lineup without
hesitation. Previously, only Stevenson gave a recorded description of the suspect to police at the
scene. Officer Kevin Mobley of the Tyler police department testified that Stevenson described the
robber as a Hispanic male who was approximately chin-high on her, (1) weighing approximately 155
pounds, with a close haircut, facial hair and wearing a tan or brown shirt and blue jeans or bell-bottoms. Appellant is a Hispanic male, stands 5'10" tall with a close-cropped haircut, a moustache
and a goatee. When Appellant was arrested, he was wearing a white, collared shirt and blue jeans.

 At trial, an identification hearing was conducted. The trial court found that the one-on-one
lineup was impermissibly suggestive, (2) but denied Appellant's motion to suppress finding that there
did not exist a substantial likelihood of misidentification. The jury convicted Appellant of
aggravated robbery and this appeal followed.


Suppression of Identification

 In his first issue, Appellant argues that the trial court erred in refusing to suppress Robinson,
Stevenson and Young's in-court identification of him because it derived from an improperly
suggestive, one-on-one lineup. While they are often criticized as suggestive, one-on-one lineups do
not violate due process as a matter of law. See Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L.
Ed. 2d 401 (1972); Garza v. State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (op. on reh'g). The
question that must be answered in each case is whether the suggestiveness inherent in the procedure
was such as to give rise to a substantial likelihood of irreparable misidentification. See Biggers, 409
U.S. at 198-99, 93 S. Ct. at 381-82; Jackson v. State, 657 S.W.2d 123, 127 (Tex. Crim. App. 1983);
Capello v. State, 775 S.W.2d 476, 482 (Tex. App.-Austin 1989, pet. ref'd). 

 A two-step analysis is used to determine the admissibility of an in-court identification. Delk
v. State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993). First, we assess whether the lineup was
impermissibly suggestive. Id. If we determine that the lineup is impermissibly suggestive, then,
based on the totality of the circumstances, we consider whether the suggestive lineup can give rise
to a "substantial likelihood of irreparable misidentification." Id. In the case at hand, the State
conceded to the trial court that the one-on-one lineup was improper. Thus, the core issue we will
consider is "whether under the 'totality of the circumstances' the identification was reliable, even
though the confrontation procedure was suggestive." Biggers, 409 U.S. at 200, 93 S. Ct. at 411.

 Five factors are considered to evaluate whether there was a substantial likelihood of
irreparable misidentification: (1) the opportunity of the witness to view the criminal at the time of
the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description
of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5)
the length of time between the crime and the confrontation. See Biggers, 409 U.S. at 199, 93 S. Ct.
at 411; see also Manson, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253, 53 L. Ed. 2d 140 (1977). We will
review the five Biggers factors, which are all issues of historical fact, deferentially in a light
favorable to the trial court's ruling. See Loserth v. State, 963 S.W.2d 770, 773-74 (Tex. Crim. App.
1998). The factors viewed in this light should then be weighed de novo against "the corrupting
effect" of the suggestive pretrial identification procedure. Id. The reviewing court must view the
historical facts in a light most favorable to the court's ruling if the trial court does not make express
findings of historical facts. Id. at 774. 

 Considering first Stevenson's description, the factors indicate that her identification was
reliable. She had an excellent opportunity to view Appellant at the time of the crime. Stevenson
stated that as she approached Appellant, he looked directly up into her face. Stevenson testified that
she took notice of Appellant. Stevenson stated that she turned and watched as Appellant walked
through the door Robinson had held open for her because she was used to having Robinson hold
doors open for her and found Appellant's behavior to be unusual. Stevenson's prior description,
while not overly detailed, was accurate. In her initial statement to police, Stevenson described the
robber as a Hispanic male, who was as tall as her chin, weighed approximately 155 pounds, had a
closely cut hair and facial hair, and who wore blue jeans or bell-bottom pants and a tan or brown
shirt. Although the record reflects that Stevenson's written statement to police indicated that
Stevenson had described the robber as being approximately five feet tall, Officer Mobley testified
that Stevenson, who is approximately six feet tall, gestured that the man was chin-high to her,
indicating that she believed Appellant was taller than five feet. Apart from the color of the shirt,
Stevenson's description closely matches Appellant. Finally, the record reflects that Stevenson
identified Appellant at the police station within an hour-and-a-half of the robbery and did so without
hesitation.

 Turning to the description offered by Robinson, our analysis of the Biggers factors indicate
that his identification was also reliable. Robinson had a good opportunity to view the criminal at the
time of the crime with a high degree of attention. Robinson testified that he had opened the door for
Stevenson and that Appellant had entered after Stevenson exited, but before Robinson could follow. 
Robinson testified that he considered Appellant's act to be rude, looked directly at Appellant and
spoke to him. The record indicates that Robinson did not give a description to police prior to
identifying Appellant in the one-on-one lineup. Appellant argues that without a prior description
from the scene, there is no way to check the accuracy of the prior description. Although such a
statement may be true, the factors set forth in Biggers and its progeny are not exclusive. See Brown
v. State, 29 S.W.3d 251, 252 (Tex. App.-Houston [14th Dist.] 2000, no pet.). As such, we disagree
that our inability to consider one of the factors lends itself to any conclusion. Rather, we determine
reliability considering the totality of the circumstances. See Manson, 432 U.S. at 99, 97 S. Ct. at
2245. Considering the last two Biggers factors, like Stevenson, Robinson also identified Appellant
at the police station within an hour-and-a-half of the robbery and did so without hesitation.

 Finally, we apply the Biggers factors to the identification testimony offered by Young. Like
Robinson, Young did not give a prior description to the police, so we cannot consider the third
factor. Young had two opportunities to view Appellant during the commission of the crime. First,
Young viewed Appellant as he entered the restaurant. The record indicates that Young's first
viewing of Appellant was through the glass doors as Appellant entered the restaurant. Young
testified that she looked at the man for a couple of seconds before he disappeared from her view. 
Young testified that Appellant disappeared around the corner, prompting Young, who was concerned
by Appellant's disappearance, to peer over the counter and around the corner to attempt to locate
Appellant. At this time, Young viewed Appellant a second time as he pulled the ski mask down over
his face and removed a gun from beneath his shirt. The record indicates that Young's second
viewing of Appellant was at a closer distance than her first. Given her concern, it follows that
Young's degree of attention on her second viewing was higher than her degree of attention exhibited
during her first viewing. Like the other two witnesses, Young identified Appellant at the police
station within an hour-and-a-half of the incident without hesitation.

 Taken together, under the "totality of the circumstances," we conclude the trial court did not
err in admitting the in-court identification of Appellant by Stevenson, Robinson or Young because
the suggestiveness inherent in the lineup procedure, considered in conjunction with the historical
facts in light of the Biggers factors, was not such as to give rise to a substantial likelihood of
irreparable misidentification. Consistent with Biggers, the testimony of these three witnesses shows
that their respective in-court identifications of Appellant were independent of, and not influenced
by, the one-on-one lineup of Appellant. Therefore, we hold that the trial court did not abuse its
discretion in admitting the testimony of Robinson, Stevenson or Young identifying Appellant as the
person robbed the restaurant. Appellant's first issue is overruled.


Legal Sufficiency

 Appellant next contends that the evidence is legally insufficient to support the trial court's
verdict. Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d
1, 6 (Tex. App.-San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the jury's verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871
S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by
the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed.
2d 652 (1982).

 In the case at hand, Appellant was convicted of aggravated robbery. In order to sustain a
conviction for aggravated robbery, the prosecution must present evidence supporting that: (1)
Appellant was in the course of committing theft; (3) and (2) with the intent to obtain or maintain control
of the property, Appellant intentionally or knowingly threatened or placed another in fear of
imminent bodily injury or death; and (3) Appellant used or exhibited a deadly weapon. See Tex.
Pen. Code. Ann. §§ 29.02(a)(2) and 29.03(a)(2) (Vernon 1994). No completed theft is required in
order for the proscribed conduct to constitute the offense of robbery. See White v. State, 671 S.W.2d
40, 41-42 (Tex. Crim. App. 1984).

 Both Robinson and Stevenson, who were the last two customers in the restaurant, testified
that Appellant entered the restaurant as they were exiting. Young testified that she saw Appellant
pull a ski mask down over his face and produce a black gun from underneath his shirt. Evans
testified that a man in a ski mask approached her with his gun raised, causing her to scream. Evans
further testified that the man grabbed her by the back of her shirt, held a gun to the back of her neck
and shoulders and demanded that she open the cash register drawers. Moreover, Evans testified that
she feared that she would be killed, but that the man fled when the alarm sounded. Both Robinson
and Stevenson testified that they observed Appellant run from the restaurant. Robinson testified that
Appellant was carrying a black gun and was wearing a ski mask. 

 Appellant's argument that the evidence is legally insufficient is based on his allegations that
the identification testimony was erroneously admitted, and therefore, that the State failed to connect
Appellant to the crime beyond a reasonable doubt. But since we have held that the identification
testimony was properly admitted, Appellant's argument with respect to legal sufficiency is without
merit. We hold that there is legally sufficient evidence on which the jury could have based its
finding that Appellant committed aggravated robbery. Appellant's second issue is overruled.

 

Factual Sufficiency

 Turning to the factual sufficiency review process, we first assume that the evidence is legally
sufficient under the Jackson standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App.
1996). We then consider all of the evidence in the record related to Appellant's sufficiency
challenge, not just the evidence which supports the verdict. Id. We review the evidence weighed
by the jury which tends to prove the existence of the fact in dispute, and compare it to the evidence
which tends to disprove that fact. See Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997). We may disagree with the jury's determination, even if probative evidence exists which
supports the verdict. See Clewis, 922 S.W.2d at 133. However, our evaluation should not
substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness
testimony. See Santellan, 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict
on such matters is generally regarded as conclusive. See VanZandt v. State, 932 S.W.2d 88, 96
(Tex. App.-El Paso 1996, pet. ref'd). We will reverse only when the verdict is against the great
weight of the evidence presented at trial so as to be clearly wrong and unjust. See Clewis, 922
S.W.2d at 134. 

 In the instant case, Appellant's argument that the evidence is factually insufficient is likewise 
based on his allegations that the identification testimony was erroneously admitted, and therefore,
that the verdict is so contrary to the overwhelming weight of the evidence that it must be judged
clearly wrong and unjust. As set forth above, the identification testimony was properly admitted. 
Moreover, our review of the record does not uncover any great weight of evidence contradicting the
finding made by the jury in this case, nor does the jury's verdict otherwise shock the conscience of
this Court. Therefore, we conclude that the evidence is factually sufficient to support the jury's
finding that Appellant was guilty of aggravated robbery. Appellant's third issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 SAM GRIFFITH 

 Justice

Opinion delivered March 20, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.


(DO NOT PUBLISH)
1. Officer Mobley estimated Stevenson's height at approximately six feet.
2. At the identification hearing , the State of Texas (the "State") conceded that the line-up was improper, but
argued that there was not a substantial likelihood of misidentification under the factors set forth in Neil v. Biggers,
409 U.S. 188, 199, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972).
3. A person commits theft if he appropriates property without the owner's effective consent and with intent
to deprive the owner of property. See Tex. Pen. Code. Ann. § 31.03 (Vernon 1994).