11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Norberto Manuel Castor

Appellant

Vs.                   No.
11-03-00071-CR B Appeal from Taylor County

State of Texas

Appellee

 

The trial
court convicted Norberto Manuel Castor of the following offenses against his
girlfriend=s 10-year-old daughter:  aggravated sexual assault by causing his
sexual organ to penetrate the victim=s sexual organ, aggravated sexual assault by causing his tongue to
penetrate her sexual organ; sexual contact by causing his hand to touch her
genitals; sexual contact by causing her hand to touch his genitals; sexual
performance by a child of deviate sexual intercourse; and possession of child
pornography of appellant performing deviate sexual intercourse on the victim.[1]  The trial court assessed appellant=s punishment at confinement for life for the
2 aggravated sexual assaults and confinement for 20 years for each of the other
4 offenses.  We affirm.

All of the
offenses occurred on December 13, 2001. 
Appellant had recorded the offenses on two videotapes which were
admitted as State=s
Exhibits Nos. 12 and 13.  In his first
issue, appellant contends that the trial court erred in denying his motion to
suppress both videotapes.  Appellant contends
that the tapes were seized as a result of an illegal search by his
girlfriend.  Appellant contends that the
search violated TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon Supp. 2003).[2]








The only
witness at the suppression hearing was Maria Teresa Torres, the victim=s mother, who was also appellant=s Aoff and on@
girlfriend for 11 years.  Torres
testified that she had five children and that appellant was the father of her
daughter who was younger than the victim. 
Torres stated that, all during their relationship, they each kept their
own residences.  When Torres moved to
Abilene, appellant also moved but did not live with her.  During the time that they were going
together, appellant would come to Torres= home and spend the night, Torres would go to appellant=s home and spend the night, and Torres= children (including her daughter by
appellant and the victim) would go to appellant=s house and spend the night.   

At the
time of the offense and two months later when she discovered the videotapes,
Torres had a key to appellant=s house, and he had a key to hers. 
Appellant had told Torres that she could  go inside his home to get whatever she needed.  Appellant also said that Torres did not need
to ask for permission.  Torres testified
that appellant had insisted that she have a key because he said that his house
was just as much hers as it was his. 
Torres had used the key to get things she needed for the kids, and
appellant had not become mad.  

Prior to
the offenses in December, appellant had borrowed Torres= mother=s video camera and two tapes. 
Her mother had mentioned to Torres that appellant had had her camera for
a while and that he had not returned it. 
In February 2002, Torres went to appellant=s house to find her mother=s video camera and her two videotapes. 
She was also searching for drugs. 
Torres had previously caught appellant using drugs and  did not want him around her daughters if he
continued using drugs.  Torres testified
that, when she confronted appellant about using drugs, appellant stated she
could go over to his home and search for drugs.  She used the key appellant had given her to enter his home and
found her mother=s video camera behind a door.  Torres found two small videotapes underneath
a mattress.  Her mother=s video camera used tapes smaller that a
standard VHS tape.  

Torres
locked appellant=s house and went to her home.  When she watched the tapes to be sure they
were her mother=s tapes of parties and Quinceaneras, Torres
saw images of appellant engaging in criminal activity with the victim.  Torres fast forwarded the tapes and saw
images of music and dancing consistent with what her mother had
videotaped.  Torres called 9-1-1 and
turned the tapes over to the police. 
The next day, appellant=s brother and sister asked Torres to give them her key to appellant=s home. 









In reviewing
a trial court=s ruling on a motion to suppress, appellate
courts must give great deference to the trial court=s findings of historical facts as long as the
record supports the findings.  Guzman
v. State, 955 S.W.2d 85 (Tex.Cr.App.1997). 
We must afford the same amount of deference to the trial court=s rulings on Amixed questions of law and fact,@ such as the issue of probable cause, if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor.  Guzman v. State, supra at 89.  Appellate courts, however, review de novo Amixed questions of law and fact@ not falling within the previous category.   Guzman v. State, supra.  When faced with a mixed question of law and
fact, the critical question under Guzman is whether the ruling Aturns@ on an evaluation of credibility and demeanor.  Loserth v. State, 963 S.W.2d 770, 773
(Tex.Cr.App.1998).  A question Aturns@ on an evaluation of credibility and demeanor when the testimony of one
or more witnesses, if believed, is always enough to add up to what is needed to
decide the substantive issue.  Loserth
v. State, supra.  We must view the
record in the light most favorable to the trial court=s ruling and sustain the trial court=s ruling if it is reasonably correct on any
theory of law applicable to the case.  Guzman
v. State, supra.   

Appellant
contends that Torres committed the offense of theft[3]
when she entered his home, searched the home, found the videotapes, and took
them.  Because her actions constituted
an offense, appellant argues that the tapes should have been excluded pursuant
to Article 38.23.  We disagree.

Torres did
not commit a crime when she entered appellant=s home and when she took her mother=s property.  Appellant had given
her a key and his permission not only to enter but also to search and to remove
items from his home.  The items Torres
removed belonged not to appellant but to Torres= mother who wanted the items returned. 
The trial court did not abuse its discretion when it denied the motion
to suppress.  The first issue is
overruled. 








In his
second and third issues, appellant contends that the evidence is legally and
factually insufficient to support his conviction.  In order to determine if the evidence is legally sufficient, we
must review all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson v.
State, 17 S.W.3d 664 (Tex.Cr.App.2000). 
In order to determine if the evidence is factually sufficient, we must
review all of the evidence in a neutral light and determine whether the
evidence supporting guilt is so weak as to render the conviction clearly wrong
and manifestly unjust or whether the evidence supporting guilt, although
adequate when taken alone, is so greatly outweighed by the overwhelming weight
of contrary evidence as to render the conviction clearly wrong and manifestly
unjust.  Vasquez v. State, 67
S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283
(Tex.Cr.App.2001); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain
v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922
S.W.2d 126 (Tex.Cr.App.1996). 

The victim
testified that she would stay at appellant=s home usually with her half sister, who was appellant=s child. 
Appellant=s sister and her children lived with
appellant.  Since his home had two
bedrooms, appellant=s
sister and her children lived in one bedroom, and appellant lived in the
other.  When they would stay with
appellant, the victim and her half sister would sleep with appellant in his
room.  The victim described how, one
time when she was taking a shower before going to school, appellant entered the
bathroom and asked if he could wash her. 
When she told him no, appellant left. 
He returned  with a video camera,
got undressed, and got into the shower with her.  He washed her body and left. 
She got dressed and went into the bedroom.  Appellant woke her half sister and told her to take a
shower.  While her half sister was
bathing, appellant told the victim to lie on the bed.  He got on top of her.  At
some point, appellant took off the victim=s clothes.  The victim testified
that she did not remember what all happened and that the next thing she could
remember was appellant telling her to put her clothes back on.  








State=s Exhibits Nos. 12 and 13 contain the same
images.  Exhibit No. 13 is marked AWork Copy.@  The camera automatically dated
the images of appellant and the victim as made on  December 13, 2001, and inserted the time of 6:59 a.m. to 7:03
a.m. for the images in the bathroom and 7:06 a.m. to 7:10 a.m. for the images
in the bedroom.  In the tape, the victim
was taking a shower and being rubbed with soap by appellant both while
appellant is clothed and standing outside of the shower and while appellant is
naked and inside the shower with the victim. 
Appellant touched the victim=s genitals and her buttocks.  He
also sexually stimulated himself. 
Appellant left the shower and the bathroom.  However, he kept the camera in the bathroom and recorded the
victim finishing her shower.  Next,
appellant and the victim are in a bedroom. 
The tape showed appellant touching the victim=s chest and genitals with his hands, showed
him taking her hand and placing it on his genitals as he directed her
movements, and showed him penetrating the victim=s sexual organs with his tongue and with his sexual organ.  During these images, appellant repositioned
the camera several times, and the victim often tried to cover her genital area
with her sweater.  Images of appellant
sexually stimulating himself while he was near the victim were also depicted in
the tape.

We find
that the evidence is legally sufficient to the support the convictions.  Likewise, we find that the evidence is
factually sufficient and that the convictions are neither clearly wrong nor
manifestly unjust.  The second and third
issues are overruled.

The
judgments of the trial court are affirmed.

 

TERRY
McCALL

JUSTICE

 

September 18, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]The State filed a single multicount indictment.





[2]Article 38.23 provides in part that:

 

No evidence obtained by an officer or other
person in violation of any provisions of the Constitution or laws of the State
of Texas, or of the Constitution or laws of the United States of America, shall
be admitted in evidence against the accused on the trial of any criminal case.





[3]TEX. PENAL CODE ANN. '
31.03 (Vernon 2003) defines the offense of theft as when a person A unlawfully appropriates property with intent to
deprive the owner of property.@