# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00216-CR

**Reynaldo Garza, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-05-300205, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Reynaldo Garza guilty of two counts of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2003). After appellant pleaded true to an enhancement allegation, the trial court sentenced appellant to 26 years' imprisonment for each count. In four issues, appellant argues that (1) the trial court erred in allowing an in-court identification of him, (2) the evidence is insufficient to support the trial court's deadly-weapon finding, (3) the trial court erred in allowing crime scene photographs into evidence, and (4) the trial court erred in denying his motion for mistrial. We modify the trial court's judgments and affirm the judgments as modified.

## Background

In the early hours of January 7, 2005, Ausencio Mendoza and his son Arturo Cruz were walking home after an evening at a local restaurant. They took a shortcut through an alley and noticed a green car in the parking lot in front of the alley. Several men were getting into the vehicle.

Three of the men, including appellant, confronted Mendoza and Cruz in the alley, and appellant pointed a revolver at Mendoza's head and demanded money. Cruz gave his wallet to the assailants, but Mendoza refused, telling appellant, "If you're going to shoot, shoot." Mendoza testified that appellant pulled the trigger two or three times but nothing happened and that appellant then began hitting Mendoza in the head with the gun. Cruz testified that he feared for his father's life because appellant pointed the gun at Mendoza's head. The two other assailants, one of whom had a bat, grabbed Cruz's wallet and, when Cruz attempted to help his father, began beating Cruz with the bat. As Cruz attempted to reach his father, the green car drove towards him, causing him to jump out of the way to avoid being hit. The car was driven by Julie Lunt, and appellant's girlfriend, Alvita Lunt, was a passenger. Eventually a security guard intervened and detained one of the assailants and the women in the car. Appellant and the third assailant fled the scene on foot.

During a search of the car, Detective Brian Miller found a bat, a BB gun, a receipt for the recent purchase of the BB gun, and Alvita Lunt's wallet, which held a jail identification card belonging to appellant. From this card, Detective Frank Rodriguez obtained appellant's driver's license photograph and created a photographic lineup. Both Mendoza and Cruz identified appellant from the lineup. Appellant was charged with two counts of aggravated robbery.

**Photographic Array**

In his first issue, appellant argues that Cruz's and Mendoza's in-court identifications of him were "tainted by an impermissibly suggestive photographic array." Specifically, appellant claims that (1) three photographs included in the array were obviously fake, (2) he appears from the pictures to have lighter skin than the other individuals in the array, and (3) the safeguard of having

2

both witnesses view the lineup separately was ineffective because the witnesses admitted to talking to each other about the assault before making their identifications.

In general, an in-court identification that is tainted by an impermissibly suggestive pretrial photographic identification is inadmissible. *Loserth v. State*, 963 S.W.2d 770, 771-72 (Tex. Crim. App. 1998). In determining whether an in-court identification has been tainted, we ask first whether the pretrial identification procedure was impermissibly suggestive and, if so, whether the improperly suggestive procedure created a very substantial likelihood of irreparable misidentification.[1] *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Loserth*, 963 S.W.2d at 771-72. The defendant bears the burden of establishing by clear and convincing evidence that the pretrial identification was improper. *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993); *Moore v. State*, 140 S.W.3d 720, 730 (Tex. App.—Austin 2004, pet. ref'd); *see Barley v. State*, 906 S.W.2d 27, 34 (Tex. Crim. App. 1995). Our analysis requires that we consider the totality of the circumstances surrounding the identification. *Barley*, 906 S.W.2d at 33.

"[N]either due process nor common sense requires" that the other pictures used in a photographic array exactly match the defendant's characteristics. *Turner v. State*, 600 S.W.2d 927, 933 (Tex. Crim. App. 1980). Rather, the array must show individuals who fit a rough description of the suspect. *Wilson v. State*, 15 S.W.3d 544, 553 (Tex. App.—Dallas 1999, pet. ref'd). "While subjects in a photographic array do not need to be identical, their similarities in appearance should

---

[1] In determining the likelihood for irreparable misidentification, we assess reliability by considering several non-exclusive factors, including: (1) the witness's opportunity to view the criminal act, (2) the witness's degree of attention, (3) the accuracy of the suspect's description, (4) the level of certainty at the time of confrontation, and (5) the time between the crime and confrontation. *See Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998).

provide a reasonable test for the witness's capacity to reliably identify the perpetrator." *Escovedo v. State*, 902 S.W.2d 109, 117 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). There is no standard for the similarities required in a pretrial identification procedure, only that there not be a substantial likelihood of irreparable misidentification. *Clay v. State*, 702 S.W.2d 747, 749 (Tex. App.—San Antonio 1985, pet. ref'd).

Appellant filed a motion to suppress the photographic identification, and Detective Rodriguez testified at the pretrial hearing. Rodriguez testified that he took reports of the assault from Mendoza and Cruz a couple of days after the crime and that Mendoza and Cruz provided descriptions of the assailants to Rodriguez. Rodriguez showed the photo lineup to Mendoza and Cruz separately from each other. Neither Mendoza nor Cruz had been shown a picture of appellant before seeing the array, and both picked appellant out of the lineup as the assailant who had the gun.

On cross-examination, Rodriguez explained that he created the lineup with driver's license pictures from the Department of Public Safety database; the lineup included appellant's picture along with those of five other Hispanic men. Because appellant has a teardrop tattoo under his left eye, to ensure a representative lineup, Rodriguez digitally enhanced three other pictures in the array to show tattoos under the subjects' left eyes. Appellant argued that he was the only one with a real tattoo, that the digitally enhanced pictures were obviously fake and, therefore, that the lineup was unfairly suggestive. The trial court denied the motion to suppress the photo array, commenting that "the coloring, the lighting, the background, the age, they all look to be about—they all look to be about the same." The trial court viewed appellant's tattoo in court, concluded that it looked "more like a blemish than a teardrop" tattoo, and noted that the faces in the other photographs

4

"all appear to have some kind of blemish or something." *See Escovedo*, 902 S.W.2d at 117 (holding that photographic array was not unduly suggestive when all photographs were of Hispanic males with characteristics similar to defendant's even though only one other subject had tattoo and facial hair similar to defendant's).

After viewing the original array, we agree with the trial court that the array was not impermissibly suggestive. The photographs, all driver's license photographs, depict six Hispanic men with features, hair, and skin tone similar to those of appellant. Although appellant claims the tattoos in the digitally enhanced pictures were obviously fake, the array supports the trial court's statement that appellant's tattoo more closely resembles a blemish than a teardrop, and we cannot hold that the digitally added teardrops in the other photographs are so obviously fake as to render the array impermissibly suggestive. Further, although Cruz and Mendoza told Rodriguez that the assailant with the gun had a teardrop tattoo near his left eye, Rodriguez testified that neither Cruz nor Mendoza commented about the tattoo when viewing the lineup or in identifying appellant as the perpetrator, and they viewed the photographic array independently of each other and both identified appellant without hesitation. Finally, appellant has cited to no authority establishing that because Mendoza and Cruz, who are father and son, discussed their traumatic experience between the night of the assault and the day they identified appellant, their identifications were unreliable.

We hold that appellant has not established that the pretrial identification procedures were impermissibly suggestive. *See Delk*, 855 S.W.2d at 706. We therefore need not address whether those procedures created a substantial likelihood of misidentification. *See Loserth*, 963 S.W.2d at 772. We overrule appellant's first issue.

5

## Deadly Weapon Finding

In his second issue, appellant argues that "there is no evidence to support the trial court's findings on [the] use of a deadly weapon." He claims that because both judgments contain a finding that a motor vehicle was used as a deadly weapon and no evidence was presented concerning his use of a motor vehicle as a weapon, the trial court erred.

When the jury is the trier of fact, an affirmative finding on the use of a deadly weapon may be entered by the trial court under three circumstances: (1) if the jury finds the defendant guilty as charged in the indictment and the indictment alleges use of a deadly weapon; (2) if the jury finds the defendant guilty of an allegation of use of a deadly weapon per se; or (3) if the trier of fact makes an affirmative finding in response to a special issue on use of a deadly weapon, usually at the punishment stage. *Lafleur v. State*, 106 S.W.3d 91, 95-96 & n.25 (Tex. Crim. App. 2003).

Here, the indictment alleged that appellant, while in the course of committing theft, threatened Cruz (count 1) and Mendoza (count 2) with imminent bodily injury or death and used or exhibited as a deadly weapon a car (paragraph I of each count), a gun (paragraph II), and a bat (paragraph III)." The charge instructed the jury to find appellant guilty of aggravated robbery if the jury found that appellant, while in the course of committing theft, threatened Cruz and Mendoza with bodily injury or death and used or exhibited of a deadly weapon, to wit a gun or a bat. On both counts, the jury found appellant guilty of aggravated robbery "as alleged [in] the indictment." All of the paragraphs in the indictment alleged use or exhibition of a deadly weapon (a car, a bat, or a gun), and the jury charge required a deadly-weapon finding (a gun or a bat) in order to convict

6

appellant of aggravated robbery.[2] Further, appellant opted to have punishment determined by the trial court, which, as trier of fact as to punishment issues, "had the power to add the affirmative finding to the judgment if the facts showed and [it] believed that" appellant used or exhibited or was a party to the use or exhibition of a deadly weapon during the commission of the offense. *Flores v. State*, 690 S.W.2d 281, 283 (Tex. Crim. App. 1985); *see Fann v. State*, 702 S.W.2d 602, 604-05 (Tex. Crim. App. 1986). The court, therefore, properly entered a deadly-weapon finding.

However, because the charge referred only to a gun or a bat as a deadly weapon, the judgments should not specify a motor vehicle as a deadly weapon. As an appellate court, we can correct and reform a judgment when we have the necessary data and information to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). We thus overrule appellant's second issue and reform the trial court's judgments to include an affirmative finding that appellant used a deadly weapon, to wit: a gun and/or a bat, in the commission of the offenses. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (affirming court of appeals's opinion reforming judgment to reflect jury's affirmative deadly-weapon finding).

---

[2] For count I, the jury charge provided three possible means to convict appellant: (1) if the jury found that appellant threatened Cruz with bodily injury or death and used or exhibited "a deadly weapon, to wit: a gun"; (2) if the jury found that acted as a party to his co-assailant's threatening Cruz and using or exhibiting "a deadly weapon, to wit: a bat"; or (3) if the jury found that appellant acted as a party to his co-assailant's causing bodily injury to Cruz by striking him with the bat and using and exhibiting "a deadly weapon, to wit: a bat." For count II, the charge provided that the jury should convict appellant if it found that appellant (1) threatened or placed Mendoza in fear of bodily injury or death or (2) caused Mendoza bodily injury by striking him; both paragraphs required the jury to determine that appellant used or exhibited "a deadly weapon, to wit: a gun."

7

## Victim Photographs

In his third issue, appellant argues that the trial court erred in "allowing into evidence crime scene photographs of [the] victims."

During the trial, the State introduced photographs of Mendoza and Cruz taken at the hospital after the attack. Appellant objected to the pictures, arguing that "the probative value is substantially outweighed by the prejudicial value." The trial court overruled appellant's objections. On appeal, appellant contends that the "only conceivable reason" for the photographs' introduction was to arouse the jury's sympathy and that their prejudicial effect outweighed any probative value.[3]

The admissibility of photographs lies within the sound discretion of the trial court. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). As a general rule, a photograph is admissible if verbal testimony regarding what is depicted in the photograph is also admissible and the probative value of the photograph is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Tex. R. Evid. 403; *Paredes*, 129 S.W.3d at 539-40. In weighing evidence under rule 403, we consider the following non-exclusive factors: (1) its probative value, (2) its potential to impress the jury in an irrational yet indelible way, (3) time needed to develop the evidence, and (4) the proponent's need for it. *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005). When determining whether photographs were unfairly prejudicial, we consider factors such as the number of photographs; their

---

[3] In his brief, appellant does not cite authority to support his third and fourth issues. This violates Texas Rule of Appellate Procedure 38.1(h), which requires that argument have appropriate citations to authorities. In the interest of justice, however, we will address appellant's issues.

8

gruesomeness, detail, and size; whether they are in color or black and white; whether the subject is naked or clothed; and whether they depict a body altered by autopsy. *Id.* at 734.

The photographs at issue were three photographs of Cruz and four photographs of Mendoza, all taken at the hospital and depicting Mendoza and Cruz dressed in hospital gowns. Cruz and Mendoza testified that the pictures accurately depicted their injuries. Although two pictures depict Mendoza's bloodied face, the pictures are not overly gruesome. The pictures enabled the State to show the level and extent of injuries Cruz and Mendoza sustained. We cannot hold that the trial court abused its discretion in admitting the photographs. We overrule appellant's third issue.

**Motion for Mistrial**

In his fourth issue, appellant argues that the trial court erred in denying his motion for a mistrial due to a violation of a motion in limine regarding his jail identification card.

Austin Police Officer Brain Miller testified that, while searching the green car at the scene of the crime, he found Alvita Lunt's wallet, which contained a "jail ID card." Appellant objected, saying, "I think there was a bit of a slip-up. We agreed not to talk about a jail ID card." The State responded that Miller only testified that he found a jail identification card and that Miller had not testified as to the name on the card. Appellant requested a mistrial, which the trial court denied. Jennifer Aguirre, an Austin Police Crime Scene Specialist, testified later in the trial that the police found "at least two identification cards" in the car, one of which belonged to appellant. Without an objection from appellant, the State introduced into evidence a copy of appellant's card, redacted to obscure the fact that the card is a jail identification card.

9

On appeal, appellant contends that the trial court erred by denying his motion for mistrial because, "from the totality of the evidence," the jury could reasonably infer that the identification card that Aguirre testified about was the jail identification card mentioned by Miller. Appellant argues that "this inference violated the motion in limine, since it alludes to prior convictions and/or extraneous offenses."

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). When determining whether a mistrial should have been granted, appellate courts must examine the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). In general, any error arising from an improper question to a witness or an improper answer from a witness can be cured by promptly instructing the jury to disregard the information. *Simpson*, 119 S.W.3d at 272. A motion for mistrial should be granted only when the errors complained of are so prejudicial that the continuation of the trial would be a waste of time and expense and would ultimately be futile. *Id.* To warrant a mistrial, the error must be clearly prejudicial to the defendant and must be of such magnitude as to suggest that it is impossible to remove the negative impression produced in the minds of the jurors. *Id.*

Neither Miller nor Aguirre testified that the "jail ID card" belonged to appellant. Miller testified only that he found a jail identification card in Alvita Lunt's wallet, and Aguirre testified that the police found "at least two" identification cards without discussing whether both cards were jail cards. The sum of those statements does not lead to a necessary conclusion that appellant's redacted card admitted into evidence was the jail card mentioned very briefly by Miller. Further, appellant did not seek a limiting instruction or a motion to disregard. He stated only that

10

there was a "bit of a slip-up" and, after the State pointed out that Miller had not said the name of the person on the card, sought a mistrial "just for the record." Even if there had been error in Miller's statement, an instruction to disregard could have been requested to cure any possible error, *see id.*, and appellant's failure to request a cure short of mistrial waived any error. *See McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). Finally, appellant did not object when Aguirre testified about the identification card belonging to appellant and thus has waived any error related to Aguirre's testimony. *See* Tex. R. App. P. 33.1. We overrule appellant's fourth issue.

## Conclusion

We have overruled appellant's issues. We modify the trial court's judgments to reflect an affirmative finding of a deadly weapon, "to wit: a gun and/or a bat." We further correct the trial court's judgment of conviction for count II to reflect that the jury found appellant guilty of aggravated robbery "as alleged within count II of the indictment," rather than count I. *See* Tex. R. App. P. 43.2(b). We affirm the judgments as modified.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson

Modified and, as Modified, Affirmed

Filed: September 19, 2008

Do Not Publish

11