Ralf P. LOSERTH, Appellant,

v.

The STATE of Texas, Appellee.

No. 1003–96.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 25, 1998.

Mark Stevens, Jeffrey J. Pokorak, San Antonio, for appellant.

Daniel Thornberry, Asst. Dist. Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge, delivered the opinion of the Court in which McCORMICK, Presiding Judge, BAIRD, OVERSTREET, MANSFIELD, KELLER, PRICE and HOLLAND, Judges, joined.

We recently set forth the standard for courts of appeals' review of trial courts' rulings on motions to suppress evidence based upon Fourth Amendment claims. *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997). Today we hold that standard is applicable to review of a trial court's ruling on a motion to suppress evidence based upon a claim that an in-court identification should not have been admitted due to taint by an impermissibly suggestive pretrial identification procedure, in violation of the defendant's due process rights under the Fourteenth Amendment. We vacate and remand this case to the Court of Appeals to reconsider the issue presented under the standard of review we articulated in *Guzman.*

The victim was murdered in her apartment in the early morning hours of May 17, 1992. Lewis Devlin lived in an apartment directly across from the victim in the same complex. Devlin heard a scream, followed by a crash and looked out his window in the direction of the victim's apartment, which was lit. He witnessed a tall, thin man come out of the victim's apartment onto the balcony, step over the railing, and fall to the ground, some 26 feet below. Devlin called the police who later discovered the victim's body. The night of the murder Devlin described the man he had seen only as tall, thin and wearing dark clothes like a jump suit. He did not elaborate on this description during subsequent contacts with the police. This description remained the same in a written statement made four days later and throughout a hypnosis attempt by a Texas Ranger. Over two months later, however, on July 27, the police showed Devlin a single color photograph of appellant, whereupon Devlin immediately identified the man depicted in the photo as the man he had seen exit the victim's apartment on the night of the murder. Devlin thereafter maintained appellant was the man he saw that night, and made an in-court identification of appellant at trial. Devlin testified he withheld details of appellant's appearance out of fear that appellant would come after him. Corroborative of this explanation is the fact that Devlin moved out of this apartment the day after the murder.

Appellant moved to suppress evidence of Devlin's out-of-court identification and to prohibit an in-court identification. Following a hearing on the motion outside the presence of the jury, the trial court ruled:

> The testimony regarding the photograph by Lewis Devlin will be suppressed. His in-Court identification of the Defendant, however, I'm going to rule that he had an adequate opportunity to view the Defendant at the time of the offense, and he will be permitted to identify the Defendant in Court.

The substantive legal question presented to the Court of Appeals was whether the in-court identification of appellant was wrongly admitted because it was tainted by the impermissibly suggestive pretrial photographic identification, in violation of appellant's due process rights. Conducting a *de novo* review, the Court of Appeals held the trial court abused its discretion in permitting the in-court identification.

An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photo-

graphic identification. The test is whether, considering the totality of the circumstances, "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see also Madden v. State*, 799 S.W.2d 683, 695 (Tex.Crim.App. 1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). Reliability is the critical question:

> [I]f the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed "reliable," "reliability [being] the linchpin in determining the admissibility of identification testimony."

*Webb v. State*, 760 S.W.2d 263, 269 (Tex.Crim.App.1988)(quoting *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). The following five non-exclusive factors should be "weighed against the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances":

1. The opportunity of the witness to view the criminal at the time of the crime;
2. The witness' degree of attention;
3. The accuracy of the witness' prior description of the criminal;
4. The level of certainty demonstrated by the witness at the confrontation, and
5. The length of time between the crime and the confrontation....

*Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *see also Brathwaite*, supra; *Webb*, supra. No one disputes this is the applicable substantive law and it was set forth accurately by the Court of Appeals. The dispute here concerns the proper standard of review. We granted the State's petition to decide whether the Court of Appeals acted properly by reviewing *de novo* the trial court's admission of the in-court identification.

We recently explained the standard of review depends upon the type of question presented to the reviewing court:

> [A]s a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the ultimate resolution of those questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* 'mixed questions of law and fact' not falling within this category. This Court may exercise its discretion to review *de novo* these decisions by the intermediate appellate courts.

*Guzman*, 955 S.W.2d at 89 (citations omitted). Three types of questions were identified in *Guzman*: (1) "historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor;" (2) " 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the ultimate resolution of those questions turns on an evaluation of credibility and demeanor;" and (3) " 'mixed questions of law and fact' not falling within [the second] category."

When faced with an issue of mixed law and fact, the critical question under *Guzman* is whether it "turns" on an evaluation of credibility and demeanor. A trial court's ruling on a mixed question of fact and law will often depend in large part on how the trial court assesses the demeanor and credibility of certain witnesses. For instance, the credibility of the arresting police officer would certainly be weighed heavily by a trial court in a ruling on a motion to suppress evidence based upon an alleged lack of probable cause. But the fact that credibility and demeanor are factors, even important factors, in the trial court's assessment does not necessarily mean the mixed question falls within the second category identified in *Guzman*. *See Guzman* (question of probable cause held to fall within third category, not second); *Hunter v. State*, 955 S.W.2d 102 (Tex.Crim.App.1997)(question of whether appellant was "detained" under Fourth Amend-

ment held to fall within third category, not second). We have suggested that a question "turns" on an evaluation of credibility and demeanor when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue:[1]

> The resolution of the mixed question of law and fact presented here—whether the appellant was "detained" within the meaning of the Fourth Amendment—does not "turn" on an evaluation of credibility and demeanor. *In other words, even if we believed everything testified to by the State's witnesses, that testimony may not add up to a finding that appellant was not detained under the law.*

*Hunter v. State,* 955 S.W.2d 102, 105 n. 4 (emphasis added). That is not the case with the question here. Even if all of the eye witness's testimony were believed by the trial court, the trial court would not be compelled to conclude that the in-court identification was not tainted. For instance, applying the *Biggers* factors, if the witness credibly testified that he was not paying attention to the activities at issue, had given a prior description of the defendant that was inconsistent with the defendant's actual appearance, that the witness' identification at the confrontation was tentative, and a year had passed between the crime and the confrontation,

certainly the trial court would not be compelled to conclude that the photographic identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, just because the witness was believable. Accordingly, we hold the mixed question of law and fact presented here does not "turn" on an evaluation of credibility and demeanor for purposes of the categories set forth in *Guzman*.[2] As such, the mixed question of law and fact presented here is subject to *de novo* review.

■ But the underlying *Biggers* factors are, taken individually, historical facts and, as such, should be viewed deferentially:

> Each of [the *Biggers* ]"factors" requires a finding of historical fact as to which [the statutory presumption of correctness as to the trial court's fact findings] applies. The ultimate conclusion as to whether the facts as found state a constitutional violation is a mixed question of law and fact as to which the statutory presumption [of correctness] does not apply.

*Sumner v. Mata,* 455 U.S. 591, 597 n. 10 (1982). The reviewing court should therefore consider the five *Biggers* factors, which are all issues of historical fact, deferentially in a light favorable to the trial court's ruling. The factors, viewed in this light, should then

---

**1.** The Supreme Court has pointed to the issue of juror bias as one that "turns" on an evaluation of credibility and demeanor. *Miller v. Fenton,* 474 U.S. 104, 114–15, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985); *see also Guzman,* 955 S.W.2d at 87 (citing *Fenton*). The question of juror bias thus "merits treatment as a 'factual issue' [such that the findings of the trial court should be presumed correct] notwithstanding the intimate connection between such determinations and the constitutional guarantee of an impartial jury." *Fenton,* 474 U.S. at 115, 106 S.Ct. at 452.

**2.** We also note that *Guzman* was decided in the Fourth Amendment context, and relied in part on the Supreme Court's opinion in *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), also a Fourth Amendment case. The State argues the reasoning in *Ornelas* should not apply to issues presented outside of the Fourth Amendment context, such as a due process claim like that presented here. Review of *Ornelas* supports a conclusion that the principles discussed there as compelling a *de novo* review in the Fourth Amendment context, would also apply to

a due process claim involving the reliability of an in-court identification in light of a suggestive pretrial identification.

The majority in *Ornelas* said *de novo* review is appropriate for federal constitutional claims under the Fourth Amendment for three reasons: (1) sweeping deference would allow varied results under similar facts, inconsistent with a unitary system of law; (2) where legal concepts such as probable cause and reasonable suspicion acquire content only through application, independent review is necessary to maintain control of and clarify legal principles; and (3) *de novo* review unifies precedent so as to provide defined set of rules to law enforcement. The same reasons would apply, to a large extent, to the issue presented here. While the State argues the circumstances subject to the analysis applicable here (ie., *Biggers* factors) are beyond control of law enforcement, that is irrelevant to this case. The reliability of the identification is at the heart of the issue. Moreover, the suggestiveness of the pretrial procedure is generally exclusively within the control of law enforcement.

be weighed *de novo* against "the corrupting effect" of the suggestive pretrial identification procedure. *Cf. State v. Hardy,* 963 S.W.2d 516, 523 (Tex.Crim.App. 1997)(while appellate court must view historical facts in light most favorable to trial court's determination, whether those facts, once determined, give rise to reasonable expectation of privacy is question of law to be reviewed *de novo* ); *Loesch v. State,* 958 S.W.2d 830, 832 (Tex. Crim.App. 1997)(court of appeals was correct to conduct deferential review of historical facts and *de novo* determination of whether those facts give rise to reasonable suspicion).

■■■ The trial court in this case made no express findings of historical facts, except to state, in announcing its ruling, that the witness had an adequate opportunity to view the defendant at the time of the offense:

> ... I'm going to rule that he had an adequate opportunity to view the Defendant at the time of the offense, and he will be permitted to identify the Defendant in court.

When the trial court does not make express findings of historical facts, the facts are viewed in a light favorable to the court's ruling. *See Hardy,* supra; *Quinn v. State,* 958 S.W.2d 395, 401 (Tex.Crim.App. 1997).

The Court of Appeals conducted a *de novo* review of the historical facts as related to each of the *Biggers* factors. It erred in failing to consider some of the underlying historical facts in a light favorable to the court's ruling of admissibility of the in-court identification.[3] We emphasize that the Court of Appeals need not assign the same weight or significance to the historical facts as the trial court in deciding the ultimate question of reliability.[4] *Sumner,* supra.

The judgment of the Court of Appeals is vacated and this cause is remanded to that court for reconsideration of the issues presented in light of this opinion.[5]

WOMACK, J., concurs.

3. For instance, addressing the accuracy of the prior description, the Court of Appeals stated that it was "virtually non-existent beyond 'tall and thin' " and that Devlin was "unable to expand the details even under hypnosis." While acknowledging Devlin's explanation that he was afraid, the Court of Appeals said, "there is simply no evidence before being shown the lone photograph that he was capable of being any more descriptive than 'tall and thin.' " This conclusion fails to consider Devlin's testimony that he told officers the criminal was white. It also disregards Devlin's testimony (which the trial court was entitled to and could have reasonably believed) that he could have given a detailed description at any time.

4. The State complains about the Court of Appeals' emphasis on the third of the *Biggers* factors, accuracy of the witness' prior description. Given that Devlin's description prior to being shown the single photograph was minimal, and he withheld, for whatever reason, a more detailed description, we do not view particular emphasis on this factor as unreasonable. It does not appear that the Court of Appeals emphasized this factor to the exclusion of the others, although on remand the Court of Appeals is en-

couraged to discuss the weight of each factor in balancing them against "the corrupting effect" of the suggestive pretrial identification procedure.

5. Although the case was before it for the second time on the same issue, the high Court in *Sumner* vacated the judgment of the lower court and remanded the case to that court to reconsider the issue, emphasizing for the second time that it was " 'not to be understood as agreeing or disagreeing with the majority of the Court of Appeals on the merits of the issue of impermissibly suggestive identification procedures.' " *Sumner,* 455 U.S. at 598, 102 S.Ct. at 1307 (quoting from previous opinion). We likewise choose to remand this case to the Court of Appeals to reconsider the issue. While recent precedent has emphasized the authority of this Court to conduct our own *de novo* reviews, *Guzman,* supra, we decline to do so in this case. The Court of Appeals conducted an exceedingly careful and detailed review of the substantive legal issue presented, precedent on the matter, and the facts (despite its failure to view them deferentially). In light of the time and effort already invested in its review, and its obvious familiarity with the facts of this case, we remand to the Court of Appeals to reconsider the issue.