NUMBER 13-00-00350-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


THE STATE OF TEXAS , Appellant,


v.


ERNESTO VILLARREAL, JR. , Appellee.

___________________________________________________________________


On appeal from the County Court at Law No. 3

of Cameron County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Castillo


Appellee, Ernesto Villarreal, Jr., was stopped by a police officer and arrested for the offense of driving while intoxicated.
At a pretrial hearing, the trial court granted appellee's motion to suppress evidence obtained as a result of the stop, finding
that the officer lacked probable cause to stop the vehicle. In a single issue, the State appeals the trial court's decision. (1) We
affirm. 

Procedural and Factual Background

Appellee was charged with a Class B misdemeanor offense of driving while intoxicated which allegedly occurred on
October 30, 1999. Appellee filed a motion to suppress the evidence arising from the arrest, claiming that his arrest and
apprehension had been made without probable cause and any evidence arising therefrom should therefore be suppressed.

The trial court held a hearing on the motion to suppress on April 17, 2000. The only witness to testify was Antonio Garza,
the Harlingen police officer who stopped appellee for the alleged offense. Garza stated that at about 3:30 a.m. on the
morning of October 30th, he was dispatched to an apartment complex where he was advised a man was trying to start a
fight. When Garza arrived, the man was no longer there, but an off-duty officer who was present described a multi-colored
pickup in which the man had driven off and noted that the man appeared to be intoxicated, drove without lights, drove over
the curb, and left at a high rate of speed. After leaving, but while he was still in the same vicinity, Garza spotted a truck
that matched the description given to him and he followed until it "turned left on Madison" or "west" without signaling the
turn. Garza then pulled the vehicle over for failing to signal a left turn. The driver was identified as appellee and Garza
asked him a number of questions the answers to which tied appellee to the apartment scene. Garza also noted various
indicators of drinking, asked appellee whether he had been drinking, and appellee admitted that he had. 

On cross-examination, Garza explained that it appeared appellee was returning to the scene. When asked why his police
report noted that appellee had turned "east" on Madison, Garza explained that it had to be a mistake because Madison was a
one way street and so appellee could only have turned west. Garza stated that he should have put that appellee turned left,
rather than using the terms east or west. He agreed that if appellee had turned east, he would have made a right, rather than
left turn, but also noted that if that had been the case, appellee would have been going the wrong way down a one-way
street. When asked about the inconsistency of the police report that indicated a charge of failing to signal a left turn, while
also stating that appellee turned east, which would have been a right turn, Garza explained that appellee was making a left
turn, not a right turn but that he had made a mistake in writing east instead of west. He denied that he was just looking for
any reason to pull over the truck and denied pulling the truck over just because it matched the description given. He
admitted that there was no traffic around but noted that he had the discretion to stop a person for failure to signal a left turn. 
Garza admitted that he did not issue a ticket for the traffic offense and that there were no other officers who witnessed the
failure to signal. He also admitted that he did want to pull over the vehicle to continue the investigation about the fight and
was looking for a valid reason to pull the truck over.

After hearing arguments, the trial judge then stated:

Very well. First on the statement of facts. From what I have heard this morning the facts are briefly as follows. Obviously
they are summarized. Officer is called to the scene of a dispute in Harlingen somewhere, obviously within his jurisdiction.
Officer responds, speaks to somebody, a good friend of his who is in some capacity a law enforcement officer. I believe he
said he was a deputy of some sort, sheriff's office. Anyway, the account comes that somebody has been involved trying to
instigate, trying to start a fight of some sort, drives off in a multi-colored vehicle. Vehicle leaves the scene. No license
plates. Lights are off. All we have is a multi-colored vehicle. 

Officer leaves the scene. In the vicinity he sees a multi-colored

pickup truck matching the description. Officer follows. At some point 

sees a failure to make a turn signal, stops it. That's the facts.

Now, conclusions of law: An officer obviously may stop a vehicle when the stop is based on probable cause. The
constitution of the United States also protects everyone in this room, in this country from illegal searches and seizures. In
other words, if you are going to stop me, have a valid reason, a legal reason. Officer testifies, however, in his own words,
when he sees this truck he does want to stop it. He follows it looking for a valid reason to stop the truck. I think his
suspicion at that point is mere suspicion based on the information that has been given tohim by somebody else, not
anything he can really depend on, I think, to a very high degree. However, he hangs his stop on this failing to stop or failing
to signal left or east. The Court doesn't buy his testimony. 

Conclusions of law: I find that the officer lacked probable cause to commit the stop on this vehicle and the Court will go
ahead and grant the motion to suppress.

Neither party requested written findings of facts or conclusions of law.

Standard of Review

We review motions to suppress under the standards set forth in Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). The standard of appellate review depends on the type of questions presented.Guzman recognizes three different
categories of questions and provides the appropriate standard for each.

The first category of questions involves those relating to the trial court's determination of the historical facts supported by
the record, especially those in which the fact findings are based on an evaluation of credibility and demeanor. As to
questions in that category, the appellate courts should afford almost total deference to the trial court's determination. Id.

The second category is that of trial court rulings on "application of law to fact questions," also known as "mixed questions
of law and fact," where the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. An
appellate court reviews questions in this category under the same standard as those in the first, affording almost total
deference to the trial court's rulings. Id. 

The final category is that of "mixed questions of law and fact," which do not fall into the second category, that is, do not
turn on an evaluation of credibility and demeanor. In that circumstance, the trial court "'is not in an appreciably better
position' than the appellate court to decide the issue" and hence de novo review is appropriate. Id. However, the reviewing
court should still afford deference to the trial court on the subsidiary factual questions which themselves would fall into the
first category. Id. 
Analysis

Accordingly, we must first determine the appropriate standard of review for the issue before us.

The only evidence before the trial court was the testimony of the arresting officer. Most reviews of motion to suppress
cases will be under a bifurcated standard, in which the historical determination made by the trial court will be accorded
total deference while the application of the law to the facts will be analyzed under a de novo standard of review. State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). Where there is uncontroverted evidence and there is no evidence that
the trial court disbelieved the testimony, de novo review is appropriate. Id. at 858. Even where the evidence is
controverted and thus credibility and demeanor are factors, if the issue to be decided does not turn on credibility or
demeanor, a de novo standard applies to the review of the application of law to facts. Loserth v. State, 963 S.W.2d 770,
772-73 (Tex. Crim. App. 1998). 

The record in the present case reflects a somewhat complicated scenario. Review of the trial court's statements indicates
that the judge did not make actual findings of facts in this case, despite making a pronouncement as to the "statement of
facts." The trial court merely summarized the sole evidence before the trial court - the testimony of the officer. This
summation does not appear to reflect the court's actual beliefs as to the facts in this case. This is made clear by the trial
court's later express and unambiguous repudiation of the veracity of the officer's testimony. The judge's "conclusions of
law" expressly indicate that he did not believe the State's witness. Most telling was his remark, "...he [the officer] hangs his
stop on this failing to stop or failing to signal left or east. The Court doesn't buy his testimony." As the last statement
indicates that the trial judge clearly did not believe, much less adopt, the summation of facts which he pronounced, we
cannot consider his "statement of the facts" to be actual findings of fact. There is accordingly, not a "'concrete' set of facts"
to which we can apply the law. Ross, 32 S.W.3d at 856. Under the record before us in this case, we find that the trial
court's decision to grant the motion to suppress turned on his evaluation of credibility and demeanor of the State's witness
and we review under the second category standard set out by Guzman. Id. at 359. Accordingly, we afford almost total
deference to the trial court's ruling. Guzman, 955 S.W.2d at 89. In light of this standard, and the evidence in this case, we
decline to disturb the trial court's ruling. 

Conclusion

We overrule the State's sole issue and affirm the trial court's ruling.

ERRLINDA CASTILLO

Justice



Do not publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 9th day of August, 2001.

1. The State brings this interlocutory appeal pursuant to Texas Code of Criminal Procedure article 44.01(a)(5). Tex. Code
Crim. Proc. Ann. art. 44.01(a)(5)(Vernon Supp. 2001).