NO. 07-06-0059-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 29, 2006

_____

DAVID FLORES, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;

NO. 50,428-C; HON. JACK D. YOUNG, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

David Flores, Jr. (Flores) appeals his conviction for aggravated robbery. Via a single argument, he asks "[w]hether the Court properly allowed an admission in-court [sic] identification of the Defendant." Apparently, he believes that the out-of-court identification of him as the robber impermissibly tainted his subsequent in-court identification. The issue was raised below via a motion to suppress, which motion the trial court denied. We affirm the decision.

*Background*

Flores was indicted for robbing at knife point an employee of a Family Dollar Store. According to the record, he entered the store and began to act "mysterious." This caught the eye of the employee, who began watching him for approximately ten minutes. She described him as wearing "khaki colored pants and a white t-shirt and, like, a light yellow shirt." Eventually, Flores walked up behind her, brandished a knife and demanded money. The employee did not acquiesce. Instead, she continued to operate the cash register and assist customers who were paying for their purchases. But, as she did so, she turned momentarily to see that the person who had been acting mysteriously was the one with the knife.

Flores remained behind the employee for about ten minutes before a customer (Carter) approached the employee and Flores and inquired about the situation. Flores stated that the employee owed him money. Eventually, Carter handed Flores some money, and he left the store. Carter described Flores as "about five-four, maybe, five-five. About 145 pounds, maybe 135, somewhere around in there, brown hair," with a name tattooed on his neck, which name started with a "D" and possibly spelled "Debbie." Flores had a name tattooed on his neck but it spelled "David."

A third witness, a 12-year-old boy, also saw the incident. He, however, had difficulty describing the assailant other than by stating that he had a knife and wore a shirt over another shirt.

About 30 minutes after the robbery, the police brought Flores back to the store in handcuffs. Each of the three witnesses mentioned identified him as the assailant. The two

adults later confirmed their identification with another but in court this time. The 12 year old could not do likewise.

Other testimony received at the suppression hearing came from appellant's neighbor who lived behind the Family Dollar store. He observed appellant walking towards the store between five and six o'clock in the evening. At the time, appellant was wearing two shirts (one orange and one white) and khaki pants. Approximately 30 to 45 minutes later, appellant returned to his apartment but later left wearing only one shirt, the white one. Shortly thereafter, the neighbor saw the police appear at the apartment.

*Law*

Determining the admissibility of an in-court identification involves a two-step process. First, the court must assess whether the out-of-court identification procedure was impermissibly suggestive and then whether that suggestive procedure created a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Ibarra v. State*, 11 S.W.3d 189, 195-96 (Tex. Crim. App. 1999); *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App.1995). The accused has the burden to prove both prongs of the test and must do so by clear and convincing evidence. *Barley v. State*, 906 S.W.2d at 33-34; *Delk v. State,* 855 S.W.2d 700, 706 (Tex. Crim. App.1993). And, all depends on the totality of the circumstances, *Loseth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998), for there is no bright line rule. Rather, each case turns on its own facts and circumstances. *Simmons v. United States*, 390 U.S. at 384, 88 S.Ct. at 967, 19 L.Ed.2d at 1247.

Next, should it be determined that the initial identification procedure was impermissibly suggestive, then various other indicia should be considered to assess the likelihood that it would taint a subsequent in-court identification. A non-exclusive list of those indicia include 1) the opportunity of the witness to view the criminal at the scene of the crime, 2) the witness's degree of attention, 3) the accuracy of the witness's prior description of the criminal, 4) the level of certainty demonstrated at the confrontation, and 5) the length of time between the crime and the confrontation. *Loseth v. State*, 963 S.W.2d at 772. And, given that the standard of review applicable here is that espoused in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997), we defer to the trial court's assessment of those factors, *Loseth v. State*, 963 S.W.2d at 771, and view the evidence in a light most favorable to that assessment. *Ibarra v. State*, 11 S.W.3d at 195-96. Yet, that does not prevent us from assessing *de novo* the propensity of those factors (as present in the case) to corrupt a later in-court identification. *Loseth v. State*, 963 S.W.2d at 773-74.

*Application of Law*

According to the record, the police apprehended Flores, returned him to the store in handcuffs, and asked the witnesses whether he was the assailant. This occurred within 30 minutes of the robbery. For purposes of this opinion, we assume *arguendo* that this identification procedure may have been impermissibly suggestive. So, next we gauge whether it had a very substantial likelihood of causing a later misidentification. In doing so, we note that both the store employee, Carter, and the boy had opportunity to and actually observed appellant for an extended period of time. This opportunity to observe was not always from afar; rather, Flores eventually stood in close proximity to them when he

4

stepped behind the counter and received the monies from the man. And, it was during this period that Carter and appellant spoke for about three minutes.

Next, both the employee and boy described Flores as wearing two shirts, a description later confirmed by Flores' neighbor.[1] And, while Carter's description of the clothes differed from that of the others, he, nonetheless, recalled Flores' physical weight, height and color of hair. So too did he spy a tattoo of a name on Flores' neck and noticed that the name started with a "D," though he initially thought it read "Debbie" instead of "David."

Next, only 30 minutes lapsed between the time of the robbery and Flores' return to the store in the back of the squad car. Moreover, when asked if they identified Flores as the culprit because he was in the custody of the police or because of their recollection of the robbery, both the employee and Carter said it was based on the latter. They confirmed their identification in open court and assured the trial judge that they had no doubt that Flores (the person they identified) committed the crime. On the other hand, the boy was around "70 percent sure" Flores was the robber when asked at the scene. Furthermore, he could not identify Flores at trial.

Given the close proximity between the employee, Carter and Flores, the rather long time Carter and the employee had to observe Flores, Carter's opportunity to converse with Flores, the existence of a tattoo beginning with the letter "D" on Flores' neck as Carter described, the accuracy of the clothing description provided by the boy, employee and

---

[1]The neighbor described the shirts as one being orange and the other white. The clerk described them as yellow and white. It is conceivable that one could reasonably confuse certain shades of yellow as orange and vice-versa.

5

neighbor, the passage of 30 minutes between the crime and Flores' return to the store, and the certainty expressed by the employee and Carter in their identification of Flores, we conclude that there does not exist a substantial likelihood that the out-of-court identification tainted the later in-court identification. Consequently, the trial court did not err in denying the motion to suppress.

The judgment is affirmed.


Brian Quinn
Chief Justice

Do not publish.