*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00676-CR

Jacob **MONTEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-7171B
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:     Alma L. López, Chief Justice

Sitting:        Alma L. López, Chief Justice
                Catherine Stone, Justice
                Sandee Bryan Marion, Justice

Delivered and Filed:  September 24, 2008

AFFIRMED

Jacob Montez was convicted by a jury of capital murder and sentenced to capital life imprisonment. On appeal, Montez contends: (1) the evidence is legally and factually insufficient to support his conviction; (2) the trial court abused its discretion in admitting certain testimony and a latent fingerprint report; and (3) the out-of-court identification procedure was impermissibly suggestive. We affirm the trial court's judgment.

## BACKGROUND

Shannon Kalka met Fernando Monjares-Almaguer and Andres Torres-Trujillo at a bar and observed that Monjares-Almaguer drove a Mustang. Kalka's boyfriend, Michael Montez, decided to steal the Mustang because he believed Monjares-Almaguer was an undocumented alien and would not report the theft. Michael Montez also told his cousin, Jacob Montez, about his plan.

Kalka called Monjares-Almaguer and lured him to the house where she was staying. Because Monjares-Almaguer's Mustang was not running, Torres-Trujillo drove him in his truck to the location where he was to meet Kalka. Michael and Jacob waited in the bathroom while Kalka greeted the two men and sat them in the living room. Michael had a shotgun, and Jacob had a large wrench. Michael held the two men at gunpoint while Jacob took their wallets, cash, and keys. Jacob then tied the men's hands behind their back with duct tape and placed duct tape over the men's mouths and eyes. The men were then placed on the back floorboard of Torres-Trujillo's truck with Michael in the backseat covering them with the shotgun, Jacob driving, and Kalka in the front passenger seat. Eventually, Jacob pulled to the shoulder of a highway, and the men were taken from the truck and told to lay face-down in the deep grass beside the highway. Michael shot both men, and Michael, Jacob and Kalka left the area to purchase drugs with the stolen money. Monjares-Almaguer was shot in the chest and died. Torres-Trujillo was shot in the groin area and survived.

## SUFFICIENCY

In determining the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting a factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the verdict

only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "[D]ue deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Id.* at 9.

The jury charge permitted the jury to convict Jacob of capital murder either as a party or a co-conspirator. Under the conspiracy theory, Jacob was criminally responsible for the murder if in the attempt to carry out the conspiracy to commit the robbery, Michael committed the murder in furtherance of the robbery and the murder should have been anticipated as a result of carrying out the conspiracy. TEX. PEN. CODE ANN. § 7.02 (Vernon 2003). Although Michael testified that he loaded the shotgun in the bedroom before joining Jacob in the bathroom to hide before the arrival of Monjares-Almaguer and Torres-Trujillo, Emily Angulo, an assistant district attorney, testified that she was present when Michael was interviewed regarding the crime. During the interview, Michael stated that he took the shotgun into the bathroom and loaded it in Jacob's presence. Evidence that a defendant knew his co-conspirator might use a gun in the course of a robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery. *Love v. State*, 199 S.W.3d 447, 453 & n.1 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Michael further testified that he "racked" the gun as he entered the room, and Torres-Trujillo testified that Michael told them not to move because he would not mind killing them. This evidence is legally and factually sufficient to support the jury's finding that Jacob should

have anticipated the possibility of murder occurring during the course of the robbery. Jacob's first issue is overruled.

**ADMISSIBILITY OF EVIDENCE**

In his second and third issues, Jacob contends that the trial court erred in admitting Detective Davila's testimony regarding his first interview with Torres-Trujillo because Detective Davila shredded his hand-written notes from the interview after typing his report. In his fourth issue, Jacob contends that the trial court erred in admitting a latent fingerprint report because the report contained an erroneous statement. We review a trial court's ruling on the admissibility of evidence using an abuse-of-discretion standard of review, and we uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

a.      Detective Davila

The State has a duty to preserve evidence that possesses an exculpatory value that is apparent before the evidence is destroyed. *Salazar v. State*, 185 S.W.3d 90, 92 (Tex. App.—San Antonio 2005, no pet.).[1] Therefore, a defendant must demonstrate the lost evidence is both favorable and material to his case. *Id*. A showing that the lost evidence might have been favorable does not meet the materiality standard. *Id*. In addition, the accused must show that the State acted in bad faith when it failed to preserve the evidence in order to show a violation of due process or due course of law. *Id*.

---

[1] We decline Jacob's request that we reconsider our decision in *Salazar* based on the Waco court's decision in *Pena v. State*, 226 S.W.3d 634 (Tex. App.—Waco 2007, pet. granted). *See State v. Vasquez*, 230 S.W.3d 744, 750-51 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting Waco decision contradicts the text of the Due Course of Law Clause, the intent of the framers of the Texas Constitution, the holdings of seven Texas courts of appeals including our holding in *Salazar*, and decisions in twenty-three other states).

Detective Davila testified that he transferred all of the information that was contained in his notes to his typewritten report. Instead of using his notes from his interview to obtain Torres-Trujillo's written statement, he requested the assistance of another detective who was fluent in Spanish and was able to prepare the statement for Torres-Trujillo to review in Spanish because Torres-Trujillo did not speak or understand English. Although Detective Davila could speak and understand Spanish, he believed that he was not sufficiently fluent to prepare a written statement in Spanish. Detective Davila testified, "Everything that I take on the notes I transfer it to the report." Detective Davila stated his standard procedure is to shred his notes because "if not I would have a lot of paperwork." Detective Davila testified that Torres-Trujillo's statement in Spanish contained the same information provided in the first interview.

Jacob contends that Detective Davila should have preserved his notes because they could have revealed discrepancies in the information contained in the typewritten report. An assertion that evidence might have been favorable, however, is not sufficient to meet the applicable materiality standard. *Id*. Furthermore, Jacob has failed to establish that Detective Davila acted in bad faith in shredding his notes. *Id*. Although the better practice might be for detectives to retain their hand-written notes, the trial court did not abuse its discretion in admitting Detective Davila's testimony. Jacob's second and third issues are overruled.

b.    Latent Fingerprint Report

"[F]ingerprint-comparison testimony is admissible under Texas Rule of Evidence 702 because it is reliable and it assists the trier of fact in its task of determining whether a latent fingerprint is that of a particular person." *Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005). Jacob contends that the trial court abused its discretion in admitting the latent fingerprint

report in this case because the officer's qualifications were questionable and his report contained an error in regard to when he matched Jacob's palm print to a print from the duct tape removed from the eyes of Monjares-Almaguer.

Officer Melvin Lleras, a latent print examiner with fifteen years experience, testified regarding the numerous courses he had taken in fingerprint examination. Officer Lleras testified that the standard used in practice required a print to have seven characteristics to be considered a match. Officer Lleras testified that when he initially compared the palm print from the duct tape to Jacob's print that was on file, he noted only four matching characteristics but also noted that the print on file had an area missing. After reprinting Jacob four days later, on August 5, 2005, Officer Lleras located fourteen characteristics between the print from the duct tape and Jacob's print. Officer Lleras testified that the August 1, 2005 date on his report was incorrect. Although he made the initial comparison on August 1, 2005, he did not conclude that Jacob's print matched the print on the duct tape until after Jacob was reprinted on August 5, 2005. From this testimony, the trial court did not abuse its discretion in determining that Officer Lleras was qualified and the typographical error in regard to the dates did not require the exclusion of the evidence. Jacob's fourth issue is overruled.

### OUT-OF-COURT IDENTIFICATION PROCEDURE

In his final issue, Jacob argues that the procedure used by Detective Davila in obtaining Torres-Trujillo's out-of-court identification of Jacob was impermissibly suggestive. Deciding whether a pre-trial identification procedure was impermissibly suggestive is a mixed question of fact and law. *Loserth v. State*, 963 S.W.2d 770, 772-73 (Tex. Crim. App. 1998). We apply a de novo standard of review for mixed questions of law and fact that do not turn on an evaluation of credibility or demeanor. *Id.* at 773. To challenge the admissibility of a pretrial identification, Jacob had the

burden to show, by clear and convincing evidence, based on the totality of the circumstances, that the pretrial identification procedure was impermissibly suggestive. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array. *Barley*, 906 S.W.2d at 33. Or it may also be created by the content of the line-up or photo array itself if the suspect is the only individual closely resembling the pre-procedure description. *Id*.

Jacob contends that the pretrial identification procedure in this case was suggestive because Detective Davila showed Torres-Trujillo a "six-pack" photo array while he was in the hospital and without a certified Spanish interpreter. The photo array depicted six men with similar physical characteristics. Torres-Trujillo testified that he was able to identify Jacob in a short time as the man who had the wrench. He further testified that he recognized Jacob because he remembered his face. Torres-Trujillo testified that he did not feel any pressure to pick somebody from the lineup. Detective Davila testified that he tells the victim that he is going to show him a lineup and that he needs to know if the victim recognizes anyone in the photos and, if so, how they know the person. Detective Davila stated that he did not suggest to Torres-Trujillo which photo to select. Detective Davila testified that Torres-Trujillo quickly recognized Jacob in the array. Detective Davila testified that he speaks and understands Spanish and only required another officer's assistance in taking Torres-Trujillo's statement so that it would be written in Spanish. Given the testimony, Jacob failed to meet his burden of proving by clear and convincing evidence that the out-of-court identification procedure was impermissibly suggestive. Jacob's fifth issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alma L. López, Chief Justice

DO NOT PUBLISH