

# Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00700-CR

Preston Jacorey **TRIPLETT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 264th District Court, Bell County, Texas
Trial Court No. 68927
Martha Jane Trudo, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 22, 2013

AFFIRMED

A jury convicted appellant, Preston Jacorey Triplett, of aggravated robbery with a deadly weapon.  The trial court assessed punishment at fifty years' confinement.  In one issue on appeal, appellant argues the trial court erred in denying his motion to suppress the in-court identification of him "because the show up arranged by law enforcement officers between the complainant and the alleged suspects was impermissibly suggestive."  We affirm.

**BACKGROUND**

On July 25, 2011, the complainant, a taxi cab driver, was dispatched to the Terrace Heights Apartment complex to pick up a customer. The complainant spoke with the customer, who directed the complainant to a parking lot in the back of the apartment complex. When he arrived, the customer asked the complainant if he could unlock the door so he could put his bags in the back seat and ride in the front passenger seat. After the complainant leaned over to unlock the front passenger door, the customer opened the door and pointed a gun at the complainant's head and said "[g]ive me your money or I'm going to shoot you in the face." At this point, a second man appeared, holding a gun as well. While demanding the money, the first man pushed the gun up against the complainant's head, "muzzle stamping" his forehead.[1] The complainant gave the robbers thirty dollars and his cell phone.

After the robbers fled, the complainant used his radio to call the taxi cab dispatcher and report that he had been robbed. He then went to the police department to report the incident. After leaving the police station, he picked up his wife and the two went back to the Terrace Heights Apartments to look for his cell phone. While looking for the phone the complainant and his wife noticed three men walking across a parking lot. The complainant thought the men may have been the men who robbed him so he drove past them. As he drove past them, the complainant testified he got a good look at them and "was like, those are the guys that robbed me." He then pulled into a 7-Eleven and called the police to let them know he had seen the robbers. The complainant testified the police arrived approximately three to four minutes later.

A police officer told the complainant that possible suspects had been located that matched the description he had given earlier to the police. The officer asked the complainant to

---

[1] According to the complainant, "muzzle stamping" is an intimidation tactic accomplished by pushing the barrel of a gun into a person's head with enough force to leave a bump and bruise.

go with him to see if he could positively identify the robbers. The officer drove the complainant by the three men in his patrol car. The complainant testified he "was a hundred percent sure on the one that muzzle stamped [him] and the other guy about 95 percent sure." The third man, the complainant said, was not involved.

Appellant, who was the man who "muzzle stamped" the complainant, was charged with aggravated robbery with a deadly weapon. Pretrial, appellant filed his "Defendant's Motion to Suppress the In-Court Identification of the Defendant." A hearing was held on "the motion to suppress in court or out of court identification" and the trial court denied appellant's motion to suppress stating:

> All right. The motion to suppress the motion [sic] is denied. The Court finds that [complainant] contacted the police regarding observing the men who allegedly robbed him. He identified them. He was able to view them in a lighted area and that he pointed out two of the three men that identified as pointing the weapon at him in his cab and he pointed them out to the police.
>
> The show-up was not duly suggestive or suggestive from what the Court has viewed and so the Court further finds that [complainant] was clear as to the features he observed and pointed that out to the police. So the court is going to deny the defense motion to suppress the out of court ID.

On appeal, appellant asserts the trial court erred in denying his motion to suppress the in-court identification because the "show up" arranged by law enforcement the night of the incident was impermissibly suggestive.

Appellant asserts the trial court made no findings that either the in-court or out-of-court identifications were impermissibly suggestive. Although the trial court did not specifically make a finding referring to the in-court identification, it did make findings about the out-of-court identification, which served as a basis for appellant's motion to suppress the in-court identification. The trial court, in its findings after denying the motion to suppress, specifically

stated "[t]he show-up was not duly suggestive or suggestive" and the complainant "was clear as to the features he observed and pointed that out to the police."

## ADMISSIBILITY OF INDENTIFICATIONS

An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial identification. *See Loserth v. State*, 963 S.W.2d 770, 771–72 (Tex. Crim. App. 1998) (en banc). "The test is whether, considering the totality of the circumstances, 'the . . . identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id*. at 772 (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)). Stated otherwise, the court must determine (1) whether the identification procedure itself was impermissibly suggestive, and (2) whether the identification of the appellant was reliable. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995) (en banc). "An analysis under these steps requires an examination of the 'totality of the circumstances' surrounding the particular case and a determination of the reliability of the identification." *Id*.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). Issues of historical fact are viewed deferentially in a light favorable to the trial court's ruling. *Loserth*, 963 S.W.2d at 773. However, mixed questions of law and fact are subject to *de novo* review. *See id*. at 773–74 (holding determination of whether in-court identification was impermissibly suggestive presented mixed question of law and fact, thus applying *de novo* standard of review).

## A. Impermissible Suggestiveness

As to the first prong, a utilized procedure may have been suggestive, but the inquiry is whether it was *impermissibly* suggestive. *Barley*, 906 S.W.2d at 33. While on-the-scene show ups or confrontations have a certain degree of suggestiveness, the question is whether such suggestiveness is so impermissible as to lead to misidentification. *See Neil v. Biggers*, 409 U.S.

188, 198 (1972) (describing the relationship between suggestiveness and misidentification and stating, "[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous."). We determine whether an identification procedure "was so unnecessarily suggestive and conductive to irreparable mistaken identification" based upon the totality of the circumstances. *Id.* at 196.

Here, Officer Edgar Maceo, the police officer who escorted the complainant to the show up, testified about the procedure he used. Maceo testified he informed the complainant they had suspects detained:

> A:    . . . I was informing him that they had suspects detained there and I would escort him in my patrol unit.
>
> Q:    Did you say anything to him such as "we have the guys" or what was it you said to him?
>
> A:    There was [sic] subjects detained. As far as if they were the exact people, I didn't tell him anything like that. They were subjects detained.

Appellant asserts he was handcuffed and in the custody of multiple police officers during the show up, resulting in impermissible suggestiveness. However, while those occurrences are factors to be considered, we are directed to look at the "totality of the circumstances." *Id.*; *Barley*, 906 S.W.2d at 33. In considering the handcuffs and multiple police officers during the show up, we note the police were searching for two men who, presumably, were armed with the two guns they used in the commission of the robbery. Further, this is not a case where days or weeks went by between the incident and the show up. Instead, the men matching complainant's description were detained less than two hours after the incident in the same area. By attempting to identify the men who robbed him as soon as possible after the robbery, the complainant was able to test his memory while it was still fresh, and allowed the police to quickly release any

innocent suspects and continue their search for the suspect while he is still in the area. *See Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. [Panel op.] 1981).

After complainant identified the robbers, Maceo testified he had complainant sign a show up viewing form, containing the following language, which Maceo read aloud at the motion to suppress hearing:

> You will be advised the procedures for viewing field identification. The fact that an individual is being shown to you should not cause you to believe or guess that the guilty persons has [sic] been identified or arrested. This may or may not be the person who committed the crime. You are in no way obligated to identify anyone. Regardless of whether you make an identification the police will continue to investigate this incident.

Considering the totality of the circumstances, we conclude the out-of-court identification was not impermissibly suggestive.

## B. Reliability

Reliability is the "linchpin" in determining admissibility of such identification testimony. *Barley*, 906 S.W.2d at 34. Even assuming, *arguendo*, the show up was impermissibly suggestive, appellant still has the burden to show the suggestiveness led to a "very substantial likelihood of irreparable misidentification." *See Loserth*, 963 S.W.2d at 772 (quoting *Simmons*, 390 U.S. at 384). In determining whether a show up presented a "substantial likelihood for irreparable misidentification," several non-exclusive factors are considered: (1) the witness' opportunity to view the criminal act; (2) the witness' degree of attention; (3) the accuracy of the suspect's description; (4) the level of certainty at the time of confrontation; and (5) the time between the crime and confrontation. *Neil*, 409 U.S. at 199–200,

Here, the complainant had ample opportunity to view the person who robbed him. Complainant was within a few feet of appellant for the entire course of the robbery, which complainant testified lasted two to three minutes. Complainant testified appellant leaned into the

car through the passenger door and was close enough to complainant to "muzzle stamp" his forehead with the barrel of the gun. The complainant's level of attention was high, as he was not merely a passerby or a bystander, but instead was the victim of the crime and was held at gunpoint. The complainant described the robbers to police as two black males, approximately 5'8" to 5'10" and wearing black clothes. He told police the two men looked similar and might be brothers. At the show up, appellant was wearing a black shirt and jeans and the other man the complainant implicated was no longer wearing a black shirt. However, complainant testified that his identifications were made based on his recognition of facial features, not on what clothing they were wearing stating, "I wasn't worried about what color pants he was wearing obviously. I was looking for a facial identification." The complainant testified he "was a hundred percent sure on the one that muzzle stamped [him] and the other guy about 95 percent sure." The police officer who accompanied the complainant to the show up also testified "he was very positive" about his identifications. The complainant testified the time between the robbery and the identification was "under probably about two hours."

Based on an analysis of the *Neil* factors, we conclude the complainant's identification was reliable and no substantial risk of irreparable misidentification was created.

## CONCLUSION

Because we have concluded the out-of-court identification of appellant was reliable and not impermissibly suggestive, we conclude the trial court did not err in denying appellant's motion to suppress the in-court identification. We therefore overrule appellant's issue on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish