

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ADRIAN GUARDADO, | § | No. 08-14-00083-CR |
| Appellant, | § | Appeal from the |
| v. | § | 171st Judicial District Court |
| | § | of El Paso County, Texas |
| THE STATE OF TEXAS, | § | (TC# 20130D03559) |
| Appellee. | § | |

## O P I N I O N

Adrian Guardado was indicted for aggravated assault with a deadly weapon. After the trial court denied his motion to suppress two photo arrays identifying him as the assailant, he pled guilty as charged. In accordance with the parties' plea-bargain agreement, the trial court sentenced Guardado to five years' imprisonment. On appeal, Guardado contends that the photo arrays should have been excluded because the lineups were not administered "blindly" as required by Article 38.20 of the Texas Code of Criminal Procedure and the El Paso Police Department's internal policy. According to Guardado, the failure to administer the lineups in a blind manner, combined with "the lack of accuracy, lack of the witnesses' prior description, and the distance in time between the crime and confrontation[,]" rendered the procedure identifying him so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification. We disagree and, therefore, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the Legislature enacted Article 38.20 to improve the reliability of photograph and live lineup identifications. *See* TEX.CODE CRIM.PROC.ANN. art. 38.20 (West Supp. 2014); *Ex Parte Robbins*, No. WR-73,484-02, 2014 WL 6751684, at *14 (Tex.Crim.App. Nov. 26, 2014); *Tillman v. State*, 354 S.W.3d 425, 442 (Tex.Crim.App. 2011). The statute required Texas law enforcement agencies to "adopt, implement, and as necessary amend a detailed written policy regarding the administration of photograph and live lineup identification procedures . . . ." *See* TEX.CODE CRIM.PROC.ANN. art. 38.20, §§ 2, 3(a). An agency could choose to adopt its own policy or a model one created by the Bill Blackwood Law Enforcement Management Institute of Texas. *See id*. at §§ 1, 3(a)(1), (2). Each policy, including the model one, had to conform to certain minimum requirements enumerated in Article 38.20. *See id*. at § 3(a)(2). Among those was the mandate that the policy address, "for a photograph identification procedure, procedures for assigning an administrator who is capable of administering a photograph array in a blind manner or in a manner consistent with other proven or supported best practices designed to prevent opportunities to influence the witness[.]" *Id*. at § 3(c)(2)(F). As directed by Article 38.20, the El Paso Police Department adopted a written policy regarding the administration of photograph and live lineup identification procedures. Effective September 2012, the department's policy required "a blind administrator."

At the suppression hearing[1], Detective Robert Ontiveros admitted that he violated this policy in June 2013 when administering the two lineups because, despite participating in the investigation and "kn[owing] what Guardado looked like[,]" he compiled the arrays and showed

---

[1] The suppression hearing was continued twice.

2

them to the witnesses.  Ontiveros also admitted that, although both witnesses -- Arteasia Duke[2] and Ruth Partridge[3] -- selected Guardado's photograph from the arrays:  (1) the lineups were conducted approximately eight months after the shooting[4]; (2) neither witness had given him a prior description of Guardado; and (3) Partridge was only "ninety percent sure" the man depicted in the photograph "looked like" Guardado.

## PRETRIAL IDENTIFICATION EVIDENCE

Guardado claims that Ontiveros's admissions establish that "the State employed impermissibly suggestive techniques in [its] photographic identification array.  . . . result[ing] in a substantial likelihood of misidentification . . . ."  He is mistaken.

The question of whether an identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification is a mixed question of law and fact not turning on an evaluation of credibility and demeanor.  *Loserth v. State*, 963 S.W.2d 770, 772-73 (Tex.Crim.App. 1998).  Accordingly, we review Guardado's claim *de novo*.  *Id*. at 773.

To prevail in his claim that the trial court erred in denying his motion to suppress the photo arrays, Guardado must establish that:  (1) the out-of-court identification procedure was impermissibly suggestive; and (2) the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.  *Barley v. State*, 906 S.W.2d 27, 32-33 (Tex.Crim.App. 1995).  A pretrial identification procedure may be impermissibly suggestive based on the manner in which it was conducted and/or the content of the photo array.  *Id*. at 33.  Here, Guardado does not

---

[2] Duke was the mother of Guardado's children and a suspect.

[3] Partridge was a bartender at the bar where the shooting occurred.

[4] The shooting occurred November 4, 2012; the photo arrays were shown to Partridge and Duke about two days apart in the early weeks of June 2013.

3

complain of the content of the photo arrays shown to Duke and Partridge.[5]   Instead, he complains of the manner in which Ontiveros administered the lineups to them.   But the manner in which Ontiveros handled the pretrial identification procedure was in no way so defective as to indicate or suggest the photograph Duke and Partridge were to identify.   *Ward v. State*, 474 S.W.2d 471, 475 (Tex.Crim.App. 1971).

As best we can surmise, Guardado is arguing that the pretrial identification procedure employed by Ontiveros was impermissibly suggestive because he did not administer the lineups in a blind manner as required by department policy or Article 38.20.   That Ontiveros knew of Guardado's identity when compiling the photo arrays and showing them to Duke and Partridge does not render the procedure impermissibly suggestive as a matter of law.   Contrary to Guardado's implied assertion, a police officer's failure to conduct a photograph identification procedure in compliance with department policy or Article 38.20 is not a basis for suppressing pretrial identifications.   *See* TEX.CODE CRIM.PROC.ANN. art. 38.20, § 5(a)("Evidence of compliance with the model policy or any other policy adopted under this article or with the minimum requirements of this article is not a condition precedent to the admissibility of an out-of-court eyewitness identification."), (b)("[F]ailure to conduct a photograph or live lineup identification procedure in substantial compliance with the model policy or any other policy adopted under this article or with the minimum requirements of this article does not bar the admission of eyewitness identification testimony in the courts of this state."); *Pena v. State*, No. 14-13-00102-CR, 2014 WL 2767398, at *7 (Tex.App.--Houston [14th Dist.] June 17, 2014, pet.

---

[5] The photo arrays were not impermissibly suggestive.   They contain photographs of individuals with similar characteristics.   All six men depicted in the photographs are Hispanic males within a similar age range and with similar haircuts, facial features, and skin tones.   In addition, all of them are wearing shirts and are closed-lipped with no teeth showing.

ref'd)(mem. op., not designated for publication)(concluding that Article 38.20 does not require exclusion of an identification solely because of noncompliance with the model policies); *Agado v. State*, No. 01-13-00112-CR, 2014 WL 1912548, at *5 (Tex.App.--Houston [1st Dist.] May 13, 2014, no pet.)(mem. op., not designated for publication)(concluding that appellant could not rely on violation of Article 38.20 as a basis to suppress eyewitness identification testimony). For us to conclude that the pretrial identification procedure employed by Ontiveros was impermissibly suggestive, the record must contain more than Ontiveros's mere failure to administer the lineups in a blind manner. It must contain clear and convincing evidence demonstrating that Ontiveros indicated or suggested to Duke and Partridge that they identify Guardado as the assailant. *See Barley*, 906 S.W.2d at 33-33 (defendant must establish by clear and convincing evidence that the procedure was impermissibly suggestive). The record contains no such evidence.

Although Ontiveros was aware of Guardado's identity when compiling the photo arrays and showing them to Duke and Partridge, there is no clear and convincing evidence indicating that Ontiveros conveyed this information to Duke and Partridge in administering the lineups to them. Ontiveros testified that before showing the photo arrays to Duke and Partridge, he had each of them read and sign an admonishment, which states, in relevant part:

> The fact that these photographs are being shown to you, should not cause you to believe or guess that the guilty person(s) has been identified or arrested. The person who committed the crime *may or may not* be in the lineup.[6] [Emphasis in the original].[7]

Ontiveros also testified that he did not suggest or indicate to Duke the photograph she should select. Of course, it came as no surprise to him that she was able to identify the father of her

---

[6] In its brief, the State acknowledges that the admonishment is erroneous in one respect: it proclaims that Ontiveros did "not know the identity of the subject."

[7] The admonishment Partridge read and signed was written in Spanish.

children. Ontiveros further testified that, although he informed Partridge that he had developed a suspect in the case[8], he did not suggest or indicate to her the photograph to select. Partridge, according to Ontiveros, "immediately went to [Guardado's] picture and . . . stayed a while looking at it and then . . . pointed with her finger . . . say[ing], that's him."

Guardado seems to suggest that the passage of time between the shooting and the lineups, the lack of prior descriptions given by Duke and Partridge, and the lack of accuracy in Partridge's identification of him establish that the procedure employed by Ontiveros was impermissibly suggestive. But these factors are used to assess the reliability of a witness's identification, not the suggestiveness of the procedure. *See Luna v. State*, 268 S.W.3d 594, 605 (Tex.Crim.App. 2008)(identifying the following five non-exclusive factors in assessing reliability and recognizing that they should be weighed against the corrupting effect of a suggestive identification: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation). In other words, these factors are not only irrelevant in assessing the suggestiveness of Ontiveros's pretrial identification procedure but also immaterial unless and until Guardado has established that the manner in which Ontiveros conducted his out-of-court identification procedure was impermissibly suggestive. As our discussion above demonstrates, Guardado has failed to so establish.

Guardado's issue is overruled.

### CONCLUSION

---

[8] Ontiveros's disclosure that a suspect was included in the photographic array did not itself render the pretrial identification impermissibly suggestive because a complaining witness normally assumes that a photographic array includes a suspect. *See Johnson v. State*, 901 S.W.2d 525, 534 (Tex.App.--El Paso 1995, pet. ref'd).

The trial court's judgment is affirmed.


November 18, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

7