

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-387-CR**

KENNETH LEON MENDIOLA                                              APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## OPINION

------------

A jury convicted Appellant Kenneth Leon Mendiola of aggravated robbery with a deadly weapon and assessed his punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced him accordingly. Appellant brings a single point on appeal, arguing that the trial court reversibly erred by failing to suppress the complainant's in-court identification of Appellant because it was tainted by an improperly suggestive identification procedure. Although the

pretrial photograph array was impermissibly suggestive because Appellant's photograph was both larger and darker than the other photographs in the array, thereby calling attention to his photograph, the array did not give rise to a substantial likelihood of misidentification. We therefore affirm the trial court's judgment.

On December 13, 2005, Dors Ward, Jr., the owner of D. Ward Construction Company, drove to an apartment complex to meet with Rick Spires, a man he knew from a Bible study, to talk about remodeling an apartment. Appellant accompanied Spires to the meeting.

When Ward arrived at the apartments, he got out of his pickup truck and then turned back toward the truck to get his briefcase. Spires placed a knife to Ward's throat. Appellant stabbed Ward under his right ear, causing only a superficial wound. Appellant and Spires then forced Ward to get in his truck and drive from one bank ATM to another, withdrawing money out of his account. During this time, Spires and Appellant each held a serrated kitchen knife, five or six inches long, on Ward.

After Ward had depleted his account, Spires and Appellant forced him to drive his truck back to the apartment complex where he had first met them. Spires got his truck and ordered Ward to follow him into an empty parking lot in a warehouse district. At the parking lot, Spires stopped, got into Ward's

2

truck, told Appellant to "finish the job," and went back to his truck to wait. Appellant then stabbed Ward in the neck. Ward and Appellant struggled, and Ward managed to fight off Appellant; during the struggle, Ward's hands and arms were cut and his lung was punctured. Appellant then ran over to Spires's truck, and he and Spires drove away.

Ward put his fingers on his wounds to stop the bleeding as much as possible and drove away. He ultimately crashed his truck into the sidewalk of a car dealership. Justin Wayne Stringer, a salesman working at the dealership, approached the truck after seeing Ward crash. Stringer, who had had EMT training, testified that Ward appeared to have a serious injury to a major artery in his neck and several stab wounds to the chest. Another witness called 911. Ward was taken to the hospital and remained hospitalized for six days; he was later hospitalized again because of internal bleeding.

The day after the robbery, Detective Lopez talked with Ward and obtained descriptions of Spires and Appellant. One week after the robbery, Ward was asked to view two photo spreads. He identified Appellant from one photo spread and Spires from the second photo spread.

In his sole point, Appellant argues that the trial court erred by failing to suppress the complainant's in-court identification of him because it was tainted

3

by an improperly suggestive identification procedure. The Texas Court of Criminal Appeals has instructed us that

> [i]n considering the scope of due process rights afforded a defendant with regard to the admission of identification evidence, the United States Supreme Court has held that a pre-trial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. Hence, the Court formulated a two step analysis to determine the admissibility of an in-court identification: 1) whether the out-of-court identification procedure was impermissibly suggestive; and 2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. An analysis under these steps requires an examination of the "totality of the circumstances" surrounding the particular case and a determination of the reliability of the identification.[1]

The burden is upon the party challenging the identification to prove each prong by clear and convincing evidence.[2] If the first prong of this test is not met, we do not address the second prong to evaluate the likelihood of irreparable misidentification.[3] If, however, we determine that the identification procedure was impermissibly suggestive, we must still determine whether such

---

[1] *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995) (citations and footnotes omitted), *cert. denied*, 516 U.S. 1176 (1996).

[2] *Goldberg v. State*, 95 S.W.3d 345, 378 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd), *cert. denied,* 540 U.S. 1190 (2004).

[3] *Barley,* 906 S.W.2d at 34.

4

suggestive pretrial procedure gave rise to a substantial likelihood of irreparable misidentification.[4]

We have examined the photo spread complained of by Appellant and note that the photograph of Appellant is both larger and darker than the other photographs. Additionally, it fills more of the space provided for the photograph than do the others. The eye of one who knows nothing about the case is immediately drawn to the photograph of Appellant because it is so distinctive in relation to the remaining photographs. We therefore hold that the out-of-court identification procedure was impermissibly suggestive.[5]

We therefore must determine whether the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification.[6] Ward testified that he met with Appellant on two occasions. The first occasion was approximately a week before the stabbing. He was with Appellant for an hour or slightly less. They were evaluating the damage done to the apartment complex to determine remodeling costs. Ward testified that he did not

---

[4] *Moore v. State*, 140 S.W.3d 720, 731 (Tex. App.—Austin 2004, pet. ref'd) (citing *Simmons v. United States*, 390 U.S. 377, 383, 88 S. Ct. 967, 971 (1968), and *Brown v. State*, 64 S.W.3d 94, 99 (Tex. App.—Austin 2001, no pet.)).

[5] *See United States v. Merkt*, 794 F.2d 950, 958 (5th Cir. 1986), *cert. denied,* 480 U.S. 946 (1987); *Barley*, 906 S.W.2d at 33–34.

[6] *See Simmons*, 390 U.S. at 384, 88 S. Ct. at 971.

remember Appellant's name, just his face. He also testified that he had not been sure that he wanted Appellant to work on the job because he looked like he was on drugs.

Ward saw Appellant again on the day of the stabbing. They met around 5:30 p.m. at the apartments. He testified that he spent a little over two hours with Appellant and Rick Spires. When asked to clarify his testimony that he had spent a little over two hours with the two men, Ward testified, "It was right after—after it got dark, and it was all over with. It was approximately two hours' worth." He identified Appellant as "the one that did the stabbing. . . [, t]he most stabbing." He also testified that he was 100% sure that the person sitting next to defense counsel was the person who stabbed him.

Considering the totality of the circumstances, including the opportunity Ward had to observe Appellant on the two separate days, we hold that Appellant has failed to satisfy the second prong of the test; that is, we hold that the suggestive procedure did not give rise to a very substantial likelihood of irreparable misidentification—Ward had ample opportunity to observe Appellant and was unequivocal in his identification at trial.

6

We therefore overrule Appellant's sole point and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

PUBLISH

DELIVERED:  October 9, 2008