

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

### NOS. 2-09-183-CR
### 2-09-184-CR

MAXIMO DUARTE                                                                      APPELLANT

V.

THE STATE OF TEXAS                                                                    STATE

------------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Maximo Duarte appeals his convictions for two counts of engaging in organized criminal activity—aggravated assault with a deadly weapon, a firearm.[2] In two points, Duarte contends that the trial court erred by (1) denying his motion to

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Penal Code Ann. § 71.02(a)(1) (Vernon Supp. 2009) (defining "engaging in organized criminal activity"); *see also id.* § 22.02 (Vernon Supp. 2009) (defining "aggravated assault").

suppress identification and (2) denying his request for a jury instruction on the lesser included offense of aggravated assault.  We affirm.

## II.  Factual and Procedural Background

On the evening of May 5, 2008, in the Peppertree Apartments' parking lot in Fort Worth, Julian Valladares, Raul Lopez, Randy Ortiz and his sister Jessica were sitting in Raul's Camaro smoking marijuana when two vehicles, one unidentified and one identified as a green Impala, pulled up behind Raul's Camaro and parked as if to prevent Raul from leaving.  Several males then exited the two vehicles proclaiming they were "Latin Kings."[3]  When Raul stepped out of his car, the male driver of the green Impala ("the driver") ran at Raul and punched him—Raul fought back.  Julian, Randy, and Jessica exited the Camaro.

At some point, one of the males who had exited either the green Impala or the unidentified vehicle took out a handgun.  He fired the gun towards Raul while Raul fought with the driver and then pointed the gun at Randy, who turned and ran inside his sister's nearby apartment.  The man fired several shots towards the apartment. The shots penetrated the walls but did not hit anyone inside.  He then turned and shot Julian three times at close range, once in the shoulder, once in the head, and once in the face.  While all of this was occurring, Julian heard someone yelling the name "Casper."  After shooting Julian, the man threw some gang signs, looked at Robert Reyna, a resident of the apartments who was standing nearby, and said,

---

[3] The Latin Kings are a criminal street gang.

"Latin Kings, bitch." He then got back into one of the vehicles and left with his companions. Julian survived the shooting.

During the investigation, the complainants and other witnesses described the shooter as a light-complected Hispanic with long braided hair. The police officers in the Fort Worth gang unit were aware of only one member in the Latin Kings who had long braided hair—Duarte. Detective L. Luevanos, who was assigned to Fort Worth's gang unit, prepared a photographic lineup containing Duarte's picture and showed it to Julian, Randy, Raul, and Jessica. Jessica hesitantly identified Duarte as the shooter, writing next to his picture, "I belive [sic] this is the shoty [sic]." Julian, Randy, and Raul were unable to identify anyone as the shooter. The State charged Duarte with two counts of engaging in organized criminal activity by committing aggravated assault with a deadly weapon against Randy and Julian.

At trial, Duarte sought to suppress an in-court identification of him by anyone who had viewed the photographic lineup, claiming that it was impermissibly suggestive and substantially likely to cause misidentification on the bases cited in his motion.[4] After a hearing, the trial court denied Duarte's motion to suppress. Both Randy and Julian identified Duarte in court as the shooter, and Jessica confirmed her out-of-court identification of Duarte. Robert also made an in-court identification

---

[4] That is, "[i]n particular, the photographic arrangements shown to the witness[es] [were] suggestive because Defendant was the only person of long hair and light complexion among pictures of persons with dark complexions."

3

of Duarte. It is unclear from his testimony whether he viewed the photographic lineup. Raul did not testify at the trial.

Detective Armando Garza of the Fort Worth gang unit testified extensively about the Latin Kings, including their colors and signs. He testified that Duarte was on file with the Fort Worth gang unit as a gang member and had been known to be a Latin King for quite some time. The State submitted photographs of Duarte wearing Latin Kings' gang colors and throwing Latin Kings' gang signs. The State also presented photographs of Duarte's tattoos, representing membership in the Latin Kings. Detective Luevanos testified about the procedure used to create the photographic lineup and about Jessica's "hesitant" identification of Duarte.

Erica Rousey, who has a child with Duarte and was his girlfriend at the time of the shooting, testified that Duarte had come home the night of the shooting about four in the morning and had instructed her to tell the police, if they asked, that he had been with her. She also testified that Duarte was a member of the Latin Kings, that he, or his brother, had carved "LKN," which stands for "Latin King Nation," and a corona, symbolizing the Latin Kings, into her table, and that Duarte's nickname was "Casper."

Duarte testified that he was not the shooter, that he was not a member of the Latin Kings, and that "Casper" was not his nickname. He stated that he was with Erica the night of the shooting and that she had lied about him not being with her because they had broken up. He also stated that his older brother was a Latin King

4

and that his older brother's nickname was "Casper." Duarte admitted that his tattoos represented membership in the Latin Kings but went on to state that the Latin Kings "would be mad at [him]" for having the tattoos since he was not a member of the gang. Duarte's mother testified that Duarte had been a Latin King when they lived in Chicago but that he was not currently a member and that he was not nicknamed "Casper."

At the close of evidence, Duarte requested a lesser included offense instruction on aggravated assault. The trial court denied Duarte's request and charged the jury on two counts of engaging in organized criminal activity. The jury found Duarte guilty on both counts and assessed punishment at thirty-five years' confinement, each count to be served concurrently. The trial court sentenced Duarte accordingly. This appeal followed.

## III. Admissibility of In-Court Identification

In his first point, presenting the same grounds that he argued at trial, Duarte asserts that the trial court erred by denying his motion to suppress in-court identifications by persons who had viewed the photographic lineup prior to trial because the photographic lineup was impermissibly suggestive and created a substantial likelihood of misidentification at trial.

### A. Standard of Review

The question of whether a pretrial identification procedure was impermissibly suggestive is a mixed question of law and fact that does not turn on an evaluation

5

of credibility and demeanor. *See Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998). Accordingly, we apply a de novo standard of review. *Id.*

## B. Applicable Law

An in-court identification is inadmissible if tainted by an impermissibly suggestive pretrial identification. *Id.* at 771–72. In determining whether the trial court correctly admitted an in-court identification, we employ a two-step analysis: first, we examine whether the out-of-court identification procedure was impermissibly suggestive and if so, we then examine the totality of the circumstances to determine whether the impermissibly suggestive procedure gave rise to the substantial likelihood of irreparable misidentification. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). If a court finds that a pretrial identification procedure was impermissibly suggestive, it must then consider the factors enumerated in *Neil v. Biggers* to determine whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972); *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).[5] The defendant has the burden to show by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive and that the in-court identification is unreliable. *Barley*, 906 S.W.2d at 33–34.

---

[5] The *Biggers* factors are (1) the witness's opportunity to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the suspect, (4) the level of certainty at the time of confrontation, and (5) the time between the crime and confrontation. 406 U.S. at 199–200, 93 S. Ct. at 382.

## C. Discussion

Duarte argues that the pretrial photographic identification procedure was impermissibly suggestive because (1) "his photograph is brighter than the other five" lineup photographs, (2) his photograph is one of only two depicting persons without facial hair, and (3) his photograph is the only one "which closely resembles the description given by the witnesses."

A pretrial identification procedure may be suggestive, but that does not necessarily mean it is impermissibly so. *Id.* at 34. Suggestiveness may be implicated by the manner in which a pretrial identification procedure is conducted, as in suggesting a suspect is included in the array or when the suspect is the only individual who closely resembles the pre-procedure description. *See id.* at 33. A lineup is considered unduly suggestive if the appearance of other participants is greatly dissimilar from the suspect. *Withers v. State*, 902 S.W.2d 122, 125 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). A suspect may be greatly dissimilar in appearance from the other participants based on a distinctly different appearance, race, hair color, height, or age. *See id.* However, minor discrepancies among lineup participants will not render a lineup impermissibly suggestive. *See Partin v. State*, 635 S.W.2d 923, 926 (Tex. App.—Fort Worth 1982, pet. ref'd). The participants in a lineup do not have to be identical to satisfy the requirements of due process. *See Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985).

This case is unique in that neither Randy, Julian, nor Raul identified Duarte as the shooter when showed the photographic lineup. And it is unclear from the record whether Robert ever saw the photo lineup at issue.[6] Only Jessica made an identification from the photographic lineup, and her identification was hesitant. We were unable to find, and Duarte does not cite, any cases in which an argument was made that a photographic lineup was impermissibly suggestive and yet the witnesses who viewed the photographic lineup failed to make an identification from it. *Contra Mendiola v. State*, 269 S.W.3d 144, 145 (Tex. App.—Fort Worth 2008, no pet.) (acknowledging that witness identified appellant from the photo spread); *Mendoza v. State,* No. AP-75213, 2008 WL 4803471, at *24 (Tex. Crim. App. Nov. 5, 2008) (not designated for publication) (stating that witness identified "appellant almost immediately upon seeing the photo array"); *Newton v. State*, Nos. 05-07-01070-CR, 05-07-01071-CR, 05-07-01072-CR, 2008 WL 5221185, at *1 (Tex. App.—Dallas Dec. 16, 2008, no pet.) (mem. op., not designated for publication) (noting that witness "identified appellant from a photographic line-up as the perpetrator"). It seems to go without saying that in order to show by clear and convincing evidence that a photographic lineup is suggestive, impermissibly or otherwise, one must first show that the lineup resulted in an identification. Thus,

---

[6] Detective Luevanos testified that he showed the photographic lineup to Jessica, Randy, and Julian. Robert testified both that he had never been shown the photospread in State's Exhibit 43 and that he did see a photospread like it for this case against Duarte.

8

because the photographic lineup in this case resulted in only one hesitant identification, we conclude it was not impermissibly suggestive.[7] Accordingly, the trial court did not err by denying Duarte's motion to suppress. We overrule Duarte's first point.

## IV. Lesser Included Offense

In his second point, Duarte asserts that the trial court erred by refusing to instruct the jury on the lesser included offense of aggravated assault.

## A. Standard of Review

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included-offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); *see also Ex parte Watson*, No. PD-0294-08, 2009 WL 4825129, at *9 (Tex. Crim. App. Dec. 16, 2009) (op. on reh'g) (discussing lesser included offenses under article 37.09(1)). Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225

---

[7] Because Duarte is unable to satisfy by clear and convincing evidence the first step in the two-step analysis outlined in *Barley*, we need not and do not address the second step of the test—that is, based on the totality of the circumstances, whether the impermissibly suggestive procedure gave rise to the substantial likelihood of irreparable misidentification. *See Barley*, 906 S.W.2d at 33.

S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

## B. Discussion

To support Duarte's conviction for engaging in organized criminal activity, the State was required to prove that Duarte committed or conspired to commit aggravated assault as a member of a criminal street gang. *See* Tex. Penal Code Ann. § 71.02(a)(1) (stating that a person commits the offense of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate . . . as a member of a criminal street gang, the person commits or conspires to commit one or more of the [enumerated offenses]," which includes aggravated assault). Thus, aggravated assault is a lesser included offense of engaging in organized criminal activity. *See Adams v. State*, 40 S.W.3d 142, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (holding that convicting defendant of engaging in organized criminal activity means jury necessarily found defendant committed lesser offense of aggravated assault). Having satisfied the first step of

10

the lesser included offense analysis, we must next determine whether there is some evidence in the record that would permit a jury to rationally find that if Duarte is guilty, he is guilty only of aggravated assault—that is, that Duarte was not acting as a Latin King when he committed the aggravated assault. *See Hall*, 225 S.W.3d at 536.

Duarte argues that his testimony that he was not a member of the Latin Kings is some evidence that he is guilty only of aggravated assault. However, Duarte also testified that he was not the shooter and that he was with his girlfriend Erica the night of the shooting. Moreover, the only evidence the jury received pertaining to the shooter was that the shooter was a Latin King. There was no evidence from any source that the shooter was not or might not be a Latin King. Thus, Duarte's evidence, coupled with the remaining evidence, if believed by the jurors, would have supported only an acquittal, not a conviction for the lesser included offense of aggravated assault. *See, e.g., Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) (holding that appellant's testimony that he committed no offense is not adequate to raise lesser included offense); *Martin v. State*, 246 S.W.3d 246, 267 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (same). Consequently, the trial court did not err by failing to instruct the jury on the lesser included offense of aggravated assault. Accordingly, we overrule Duarte's second point.

11

## V.  Conclusion

Having overruled both of Duarte's points, we affirm the trial court's judgment.


PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 27, 2010

12