COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                               NOS.  2-09-183-CR

       
2-09-184-CR      

 

MAXIMO DUARTE                                                                             APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

          FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. 
Introduction








Appellant
Maximo Duarte appeals his convictions for two counts of engaging in organized
criminal activityCaggravated assault with a
deadly weapon, a firearm.[2]  In two points, Duarte contends that the trial
court erred by (1) denying his motion to suppress identification and (2)
denying his request for a jury instruction on the lesser included offense of
aggravated assault.  We affirm.

II. 
Factual and Procedural Background

On
the evening of May 5, 2008, in the Peppertree Apartments=
parking lot in Fort Worth, Julian Valladares, Raul Lopez, Randy Ortiz and his
sister Jessica were sitting in Raul=s
Camaro smoking marijuana when two vehicles, one unidentified and one identified
as a green Impala, pulled up behind Raul=s
Camaro and parked as if to prevent Raul from leaving.  Several males then exited the two vehicles
proclaiming they were ALatin Kings.@[3]  When Raul stepped out of his car, the male
driver of the green Impala (Athe
driver@)
ran at Raul and punched himCRaul
fought back.  Julian, Randy, and Jessica
exited the Camaro.








At
some point, one of the males who had exited either the green Impala or the
unidentified vehicle took out a handgun.  He fired the gun towards Raul while Raul fought
with the driver and then pointed the gun at Randy, who turned and ran inside
his sister=s
nearby apartment.  The man fired several
shots towards the apartment.  The shots
penetrated the walls but did not hit anyone inside.  He then turned and shot Julian three times at
close range, once in the shoulder, once in the head, and once in the face.  While all of this was occurring, Julian heard
someone yelling the name ACasper.@  After shooting Julian, the man threw some
gang signs, looked at Robert Reyna, a resident of the apartments who was
standing nearby, and said, ALatin
Kings, bitch.@  He then got back into one of the vehicles and
left with his companions.  Julian
survived the shooting.

During
the investigation, the complainants and other witnesses described the shooter
as a light-complected Hispanic with long braided hair.  The police officers in the Fort Worth gang
unit were aware of only one member in the Latin Kings who had long
braided hairCDuarte.  Detective L. Luevanos, who was assigned to
Fort Worth=s
gang unit, prepared a photographic lineup containing Duarte=s
picture and showed it to Julian, Randy, Raul, and Jessica.  Jessica hesitantly identified Duarte as the
shooter, writing next to his picture, AI
belive [sic] this is the shoty [sic].@  Julian, Randy, and Raul were unable to
identify anyone as the shooter.  The
State charged Duarte with two counts of engaging in organized criminal activity
by committing aggravated assault with a deadly weapon against Randy and Julian.









At
trial, Duarte sought to suppress an in-court identification of him by anyone
who had viewed the photographic lineup, claiming that it was impermissibly
suggestive and substantially likely to cause misidentification on the bases
cited in his motion.[4]  After a hearing, the trial court denied
Duarte=s
motion to suppress.  Both Randy and
Julian identified Duarte in court as the shooter, and Jessica confirmed her out-of-court
identification of Duarte.  Robert also
made an in-court identification of Duarte. 
It is unclear from his testimony whether he viewed the photographic
lineup.  Raul did not testify at the
trial.

Detective
Armando Garza of the Fort Worth gang unit testified extensively about the Latin
Kings, including their colors and signs. 
He testified that Duarte was on file with the Fort Worth gang unit as a
gang member and had been known to be a Latin King for quite some time.  The State submitted photographs of Duarte
wearing Latin Kings= gang colors and throwing
Latin Kings=
gang signs.  The State also
presented photographs of Duarte=s
tattoos, representing membership in the Latin Kings.  Detective Luevanos testified about the
procedure used to create the photographic lineup and about Jessica=s Ahesitant@
identification of Duarte.

Erica
Rousey, who has a child with Duarte and was his girlfriend at the time of the
shooting, testified that Duarte had come home the night of the shooting about
four in the morning and had instructed her to tell the police, if they asked,
that he had been with her.  She also
testified that Duarte was a member of the Latin Kings, that he, or his brother,
had carved ALKN,@
which stands for ALatin King Nation,@ and
a corona, symbolizing the Latin Kings, into her table, and that Duarte=s
nickname was ACasper.@ 








Duarte
testified that he was not the shooter, that he was not a member of the Latin
Kings, and that ACasper@ was
not his nickname.  He stated that he was
with Erica the night of the shooting and that she had lied about him not being
with her because they had broken up.  He
also stated that his older brother was a Latin King and that his older brother=s
nickname was ACasper.@
Duarte admitted that his tattoos represented membership in the Latin Kings but
went on to state that the Latin Kings Awould
be mad at [him]@ for having the tattoos
since he was not a member of the gang. 
Duarte=s
mother testified that Duarte had been a Latin King when they lived in Chicago
but that he was not currently a member and that he was not nicknamed ACasper.@

At
the close of evidence, Duarte requested a lesser included offense instruction
on aggravated assault.  The trial court
denied Duarte=s
request and charged the jury on two counts of engaging in organized criminal
activity.  The jury found Duarte guilty
on both counts and assessed punishment at thirty-five years=
confinement, each count to be served concurrently.  The trial court sentenced Duarte
accordingly.  This appeal followed.

III. 
Admissibility of In-Court Identification

In
his first point, presenting the same grounds that he argued at trial, Duarte
asserts that the trial court erred by denying his motion to suppress in-court
identifications by persons who had viewed the photographic lineup prior to
trial because the photographic lineup was impermissibly suggestive and created
a substantial likelihood of misidentification at trial. 

A.  Standard of Review








The
question of whether a pretrial identification procedure was impermissibly
suggestive is a mixed question of law and fact that does not turn on an
evaluation of credibility and demeanor.  See
Loserth v. State, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998).  Accordingly, we apply a de novo standard of
review.  Id. 

B.  Applicable Law

         An
in‑court identification is inadmissible if tainted by an impermissibly
suggestive pretrial identification.  Id. at 771B72.  In determining whether the trial court
correctly admitted an in‑court identification, we employ a two‑step
analysis:  first, we examine whether the
out‑of‑court identification procedure was impermissibly suggestive
and if so, we then examine the totality of the circumstances to determine
whether the impermissibly suggestive procedure gave rise to the substantial
likelihood of irreparable misidentification. 
Barley v. State, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995).  If a court finds that a pretrial
identification procedure was impermissibly suggestive, it must then consider
the factors enumerated in Neil v. Biggers to determine whether the
suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification.  409 U.S. 188, 199, 93
S. Ct. 375, 382 (1972); Ibarra v. State, 11 S.W.3d 189, 195 (Tex. Crim.
App. 1999).[5]  The defendant has the burden to show by clear
and convincing evidence that the pretrial identification procedure was
impermissibly suggestive and that the in‑court identification is
unreliable.  Barley, 906 S.W.2d at
33B34.








C.  Discussion

Duarte
argues that the pretrial photographic identification procedure was
impermissibly suggestive because (1) Ahis
photograph is brighter than the other five@
lineup photographs, (2) his photograph is one of only two depicting persons
without facial hair, and (3) his photograph is the only one Awhich
closely resembles the description given by the witnesses.@

A
pretrial identification procedure may be suggestive, but that does not
necessarily mean it is impermissibly so. 
Id. at 34.  Suggestiveness
may be implicated by the manner in which a pretrial identification procedure is
conducted, as in suggesting a suspect is included in the array or when the
suspect is the only individual who closely resembles the pre‑procedure
description.  See id. at 33.  A lineup is considered unduly suggestive if
the appearance of other participants is greatly dissimilar from the
suspect.  Withers v. State, 902
S.W.2d 122, 125 (Tex. App.CHouston
[1st Dist.] 1995, pet. ref=d).  A suspect may be greatly dissimilar in appearance
from the other participants based on a distinctly different appearance, race,
hair color, height, or age.  See id.  However, minor discrepancies among lineup
participants will not render a lineup impermissibly suggestive.  See Partin v. State, 635 S.W.2d 923, 926
(Tex. App.CFort
Worth 1982, pet. ref=d).  The participants in a lineup do not have to
be identical to satisfy the requirements of due process.  See Buxton v. State, 699 S.W.2d 212,
216 (Tex. Crim. App. 1985).













This
case is unique in that neither Randy, Julian, nor Raul identified Duarte as the
shooter when showed the photographic lineup. 
And it is unclear from the record whether Robert ever saw the photo
lineup at issue.[6]  Only Jessica made an identification from the
photographic lineup, and her identification was hesitant.  We were unable to find, and Duarte does not
cite, any cases in which an argument was made that a photographic lineup was
impermissibly suggestive and yet the witnesses who viewed the photographic
lineup failed to make an identification from it.  Contra Mendiola v. State, 269 S.W.3d
144, 145 (Tex. App.CFort Worth 2008, no pet.)
(acknowledging that witness identified appellant from the photo spread); Mendoza
v. State, No. AP-75213, 2008 WL 4803471, at *24 (Tex. Crim. App. Nov. 5,
2008) (not designated for publication) (stating that witness identified Aappellant
almost immediately upon seeing the photo array@); Newton
v. State, Nos. 05-07-01070-CR, 05-07-01071-CR, 05-07-01072-CR, 2008 WL
5221185, at *1 (Tex. App.CDallas Dec. 16, 2008, no
pet.) (mem. op., not designated for publication) (noting that witness @identified
appellant from a photographic line-up as the perpetrator@).  It seems to go without saying that in order
to show by clear and convincing evidence that a photographic lineup is
suggestive, impermissibly or otherwise, one must first show that the lineup
resulted in an identification.  Thus, because
the photographic lineup in this case resulted in only one hesitant
identification, we conclude it was not impermissibly suggestive.[7]  Accordingly, the trial court did not err by
denying Duarte=s
motion to suppress.  We overrule Duarte=s
first point. 

IV. 
Lesser Included Offense

In
his second point, Duarte asserts that the trial court erred by refusing to
instruct the jury on the lesser included offense of aggravated assault.

A.  Standard of Review








We
use a two-step analysis to determine whether an appellant was entitled to a
lesser-included-offense instruction. 
Hall v. State, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); Rousseau
v. State, 855 S.W.2d 666, 672B73
(Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser offense must come within
article 37.09 of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon
2006); Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); see
also Ex parte Watson, No. PD-0294-08, 2009 WL 4825129, at *9 (Tex. Crim.
App. Dec. 16, 2009) (op. on reh=g)
(discussing lesser included offenses under article 37.09(1)).  Second, some evidence must exist in the
record that would permit a jury to rationally find that if the appellant is
guilty, he is guilty only of the lesser offense.  Hall, 225 S.W.3d at 536; Salinas v.
State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau, 855
S.W.2d at 672B73.  The evidence must be evaluated in the context
of the entire record.  Moore, 969
S.W.2d at 8.  There must be some evidence
from which a rational jury could acquit the appellant of the greater offense
while convicting him of the lesser included offense.  Id. 
The court may not consider whether the evidence is credible,
controverted, or in conflict with other evidence.  Id. 
Anything more than a scintilla of evidence may be sufficient to entitle
a defendant to a lesser charge.  Hall,
225 S.W.3d at 536.

B.  Discussion








To
support Duarte=s
conviction for engaging in organized criminal activity, the State was required
to prove that Duarte committed or conspired to commit aggravated assault as a
member of a criminal street gang.  See
Tex. Penal Code Ann. ' 71.02(a)(1) (stating
that a person commits the offense of engaging in organized criminal activity Aif,
with the intent to establish, maintain, or participate . . . as a member of a
criminal street gang, the person commits or conspires to commit one or more of
the [enumerated offenses],@
which includes aggravated assault). 
Thus, aggravated assault is a lesser included offense of engaging in
organized criminal activity.  See
Adams v. State, 40 S.W.3d 142, 145 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d)
(holding that convicting defendant of engaging in organized criminal activity
means jury necessarily found defendant committed lesser offense of aggravated
assault).  Having satisfied the first
step of the lesser included offense analysis, we must next determine whether
there is some evidence in the record that would permit a jury to rationally
find that if Duarte is guilty, he is guilty only of aggravated assaultCthat
is, that Duarte was not acting as a Latin King when he committed the aggravated
assault.  See Hall, 225 S.W.3d at
536.

Duarte
argues that his testimony that he was not a member of the Latin Kings is some
evidence that he is guilty only of aggravated assault.  However, Duarte also testified that he was
not the shooter and that he was with his girlfriend Erica the night of the
shooting.  Moreover, the only evidence
the jury received pertaining to the shooter was that the shooter was a Latin
King.  There was no evidence from any
source that the shooter was not or might not be a Latin King.  Thus, Duarte=s
evidence, coupled with the remaining evidence, if believed by the jurors, would
have supported only an acquittal, not a conviction for the lesser included
offense of aggravated assault.  See,
e.g., Lofton v. State, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) (holding
that appellant=s
testimony that he committed no offense is not adequate to raise lesser included
offense); Martin v. State, 246 S.W.3d 246, 267 (Tex. App.CHouston
[14th Dist.] 2007, no pet.) (same). 
Consequently, the trial court did not err by failing to instruct the
jury on the lesser included offense of aggravated assault. Accordingly, we
overrule Duarte=s second point.








V. 
Conclusion

Having
overruled both of Duarte=s points, we affirm the
trial court=s
judgment.

 

 

PER CURIAM        

 

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT,
J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
May 27, 2010

 











[1]See Tex. R. App. P.
47.4.





[2]See Tex. Penal Code Ann.
' 71.02(a)(1) (Vernon
Supp. 2009) (defining Aengaging in organized
criminal activity@); see also id. ' 22.02 (Vernon Supp.
2009) (defining Aaggravated assault@).





[3]The Latin Kings are a
criminal street gang.





[4]That is, A[i]n particular, the
photographic arrangements shown to the witness[es] [were] suggestive because
Defendant was the only person of long hair and light complexion among pictures
of persons with dark complexions.@





[5]The Biggers
factors are (1) the witness=s opportunity to view
the criminal at the time of the crime, (2) the witness=s degree of
attention, (3) the accuracy of the witness=s prior description of the suspect, (4) the
level of certainty at the time of confrontation, and (5) the time between the
crime and confrontation. 406 U.S. at 199B200, 93 S. Ct. at 382.  





[6]Detective Luevanos
testified that he showed the photographic lineup to Jessica, Randy, and
Julian.  Robert testified both that he
had never been shown the photospread in State=s Exhibit 43 and that
he did see a photospread like it for this case against Duarte. 





[7]Because Duarte is
unable to satisfy by clear and convincing evidence the first step in the
two-step analysis outlined in Barley, we need not and do not address the
second step of the testCthat is, based on the
totality of the circumstances, whether the impermissibly suggestive procedure
gave rise to the substantial likelihood of irreparable misidentification.  See Barley, 906 S.W.2d at 33.